(251 P.3d 74)
Nos. 103,476
103,477

STATE OF KANSAS, *Appellee*, v. KEVIN WITTEN, *Appellant*.

Opinion filed March 18, 2011.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*Kenneth Van Blaricum*, county attorney, and *Steve Six*, attorney general, for appellee.

Before STANDRIDGE, P.J., MCANANY, J., and KNUDSON, S.J.

KNUDSON, J.: In district court case No. 08CR89, a jury found Kevin Witten guilty of the sale of methamphetamine within 1,000 feet of a school and possession of methamphetamine without a drug tax stamp. In a companion case, No. 08CR276, Witten pled guilty to the possession of methamphetamine and possession of a controlled substance without a drug tax stamp. On appeal, Witten challenges his convictions in case No. 08CR89, claiming that prosecutorial misconduct deprived him of a fair trial and that there was insufficient evidence that he sold methamphetamine within 1,000 feet of a school. Witten also contends the district court erred in denying his motion to withdraw his guilty pleas in case No.

08CR276. Finally, Witten also appeals the process used to determine his criminal history for sentencing purposes.

We affirm in case No. 08CR276. We affirm in part and reverse in part in case No. 08CR89. We remand case No. 08CR89 to the district court with directions to vacate Witten's conviction and sentence for the sale of methamphetamine within 1,000 feet of a school and enter a judgment of conviction for the lesser included offense of sale of methamphetamine. He is to be resentenced on the sale of methamphetamine conviction. Witten's conviction and the sentence imposed for possession of a controlled substance without a drug tax stamp are affirmed.

*The underlying facts in case No. 08CR89*

On January 23, 2007, Detective Jeff Ward of the Pratt Police Department contacted a confidential informant, Frank Sturgeon, who claimed that he could purchase methamphetamine from Witten. Detective Ward and Lieutenant Robert Walker met with Sturgeon that evening and searched his person and vehicle. Sturgeon was given an electronic transmitting device and prerecorded investigative funds. Walker and Ward followed Sturgeon to Witten's residence in Pratt and observed him enter the front door. Over the transmitter, the officers heard Sturgeon greet Witten by name and begin discussing the sale of methamphetamine. The officers heard Witten agree to sell Sturgeon 2 grams of methamphetamine for $200. Sturgeon testified at trial that he left $200 with Witten, who agreed to deliver the drugs the next day. Witten's residence was located 333 feet from the Liberty Middle School building.

Sturgeon, on leaving Witten's house, was met by Ward and Walker. Sturgeon returned the balance of undercover funds to the officers. The next day, Sturgeon was again searched by Ward and fitted with an electronic transmitting device. The officers observed Witten and Sturgeon meeting outside a local convenience store that was subsequently determined to be 854 feet from the Liberty Middle School building. Sturgeon went to the door of Witten's car and was given a small package. At trial, Detective Ward testified he did not see the exchange between Witten and Sturgeon; Lieutenant Walker testified that he personally observed the exchange.

After the exchange, Sturgeon was again searched and he delivered to the officers a small baggie containing methamphetamine. No drug tax stamp was affixed to the package.

The above factual circumstances led to the charges of sale of methamphetamine within 1,000 feet of a school and possession of a controlled substance without a drug tax stamp.

A jury found Witten guilty of both charges. His trial counsel filed a timely motion for a new trial claiming juror misconduct and error in the jury instructions. Shortly thereafter, Witten requested an appointment of a new attorney. Sam Kepfield was then appointed to represent Witten. Kepfield filed a motion for judgment of acquittal and a motion for a dispositional and departure sentence.

*The underlying facts in case No. 08CR276*

On November 13, 2007, Detective Ward met with a second confidential informant, Debbie Fields, who was asked to attempt to arrange to buy 1 gram of methamphetamine from Witten. Fields contacted Ward and advised him that arrangements had been made for the buy. That evening, officers met with Fields and searched her and her car for drugs and money. Finding none, Fields was given an electronic transmitting device and $100 of prerecorded investigative funds. Fields was observed driving to Witten's home and entering it through the rear door. In the audio transmission, Witten was heard discussing the loss of his job and the sale of illegal drugs.

After Fields left Witten's house, she was met by police and searched. Fields gave the officers a plastic bag containing a white crystalline substance which field-tested positive for methamphetamine. Fields was searched and no other drugs or additional cash was found. There was no drug tax stamp attached to the baggie. The distance between Witten's home and Liberty Middle School was again measured and determined to be less than 1,000 feet. Testing by the Kansas Bureau of Investigation confirmed the package delivered to Fields contained methamphetamine.

The above factual circumstances led to the charges of possession of methamphetamine within 1,000 feet of a school and possession of a controlled substance without a drug tax stamp. Ultimately, a

written plea agreement was entered into that provided the sale of methamphetamine within 1,000 feet of a school count would be reduced to simple possession of methamphetamine and Witten would plead guilty to the reduced charge and to possession of a controlled substance without a drug tax stamp. The parties also agreed to recommend the sentences in cases Nos. 08CR89 and 08CR276 run concurrently. An extensive hearing was held before the district court, and Witten's pleas of guilty were accepted.

## The posttrial proceedings and sentencing

A hearing on posttrial motions in both cases and sentencing was scheduled for April 24, 2009. On April 15, 2009, Witten wrote a letter to the court claiming Kepfield was neglecting him and requesting new counsel. The hearing was postponed. On May 1, 2009, the court appointed Linda Eckelman to represent Witten in both cases. Eckelman filed a supplemental motion for judgment of acquittal in case No. 08CR89 and a motion to set aside his guilty pleas in case No. 08CR276.

A hearing was held on all posttrial motions on October 2, 2009. Witten testified about the circumstances surrounding his request for a new trial, focusing on the State's posttrial delivery of additional recordings of the undercover transactions. Witten also testified that he thought that because Kepfield had withdrawn as his attorney, the plea agreement in 08CR276 was withdrawn.

The testimony and arguments on all the posttrial motions focused primarily on allegations of misconduct and improper manipulation by the prosecutor. There was no testimony from Witten or argument by his counsel suggesting Kepfield had been ineffective counsel.

After hearing Witten's testimony and arguments of counsel, the district court denied Witten's motion for a new trial in case No. 08CR89 and his motion to withdraw his plea in case No. 08CR276.

During the sentencing portion of the hearing, the court determined that Witten's criminal history score was F. In case No. 08CR89, the court granted a downward durational departure sentence of 28 months' incarceration for the sale of methamphetamine within 1,000 feet of a school charge and a concurrent sentence of

6 months on the drug tax stamp charge. With respect to case No. 08CR276, the court sentenced Witten to a controlling prison sentence of 17 months, to be served concurrently with the sentence in case No. 08CR89.

Witten has filed a timely appeal in both cases, and we turn to our analysis and disposition of the issues that have been raised.

*The State failed to prove the sale of methamphetamine occurred within 1,000 feet of a school*

Witten contends there was insufficient evidence to support his conviction in case No. 08CR89 of the sale of methamphetamine within 1,000 feet of a school. Specifically, Witten contends that the State failed to establish that Liberty Middle School qualified as a "school" within the meaning of K.S.A. 2007 Supp. 65-4161(d).

"When a defendant challenges the sufficiency of the evidence in a criminal case, the standard of review is whether, after reviewing all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Gant,* 288 Kan. 76, 83, 201 P.3d 673 (2009).

The relevant statute, K.S.A. 2007 Supp. 65-4161(d), stated in material part:

"Notwithstanding any other provision of law, upon conviction of any person for a first offense pursuant to subsection (a), such person shall be guilty of a drug severity level 2 felony if such person is 18 or more years of age and the substances involved were possessed with intent to sell, deliver or distribute; sold or offered for sale in or on, or within 1,000 feet of any school property upon which is located *a structure used by a unified school district or an accredited nonpublic school for student instruction or attendance or extracurricular activities of pupils enrolled in kindergarten or any of the grades one through 12.*" (Emphasis added.)

At trial, the detective testified as to the distances between Witten's home and the convenience store from Liberty Middle School. The detective also testified that Liberty Middle School was "operated by a Unified School District" known as "USD 382." However, there was no other evidence presented as to exactly what purposes or district functions were carried out at Liberty Middle School.

The appellate courts have been called on repeatedly to interpret the types of evidence needed to prove this element of an offense under K.S.A. 2007 Supp. 65-4161(d). Cases have established that evidence that the subject property is leased by a school district and used for one or more of the statutory purposes is sufficient to support a conviction. See *State v. Prosper*, 260 Kan. 743, 746-47, 926 P.2d 231 (1996). However, mere permissive use of public ball fields by the school is insufficient. *State v. Wilt*, 273 Kan. 273, 276-77, 44 P.3d 300 (2002).

In addition, the educational use of the property need not be extensive. For example, in *State v. Randolph*, No. 92,329, unpublished opinion filed March 24, 2006, *rev. denied* 282 Kan. 795 (2006), a school superintendent testified that the district's administration building, located 919 feet from the sale, was "school property." He also testified that two special education students worked there with a teacher as part of their education, and the building served as a point of departure and return for special education students who attended various schools in the district. The court held this evidence was sufficient to sustain convictions under the statute. Slip op. at 20.

Although the State presented evidence that Liberty Middle School was operated by a school district, no witness testified as to whether the building was used for one of the purposes set forth in the statute. Witten justifiably relies on *State v. Star*, 27 Kan. App. 2d 930, 10 P.3d 37, *rev. denied* 270 Kan. 903 (2000). In *Star*, the evidence at trial established that the transactions occurred within 1,000 feet of "Hickok School." 27 Kan. App. 2d at 933. The evidence included a diagram of the area of the sale, including the school parking lot and school grounds. However, no evidence was presented that Hickok School was a structure used by a school district "for any of the uses listed in the statute." 27 Kan. App. 2d at 933. The *Star* court found that in order to sustain a conviction for the crime of the sale of cocaine within 1,000 feet of a school, the State was required to present evidence that the structure referred to as a school satisfied the definition in K.S.A. 1999 Supp. 65-4161(d). "Such evidence is necessary to prove a necessary element of the offense, and where lacking, a jury cannot be allowed

to speculate or infer through its own observations that the structure complies with the statutory definition of a school." 27 Kan. App. 2d at 936.

On appeal, the State argues that the court should take judicial notice of the function of the school under K.S.A. 60-409 and that "[w]ell informed persons in Pratt County . . . are aware of the existence and nature of Liberty Middle School." However, the *Star* court specifically rejected the State's arguments that members of the jury could bring their common sense and background of experiences to take notice that the building was operated as a school. 27 Kan. App. 2d at 934. The same argument also was rejected in *State v. West*, No. 99,063, unpublished opinion dated November 7, 2008, *rev. denied* 289 Kan. 1285 (2009) (because State failed to present evidence to jury that Garfield School was part of a unified school district or an accredited nonpublic school, reversal of convictions was required).

The State must sustain its burden of proof on each element of an offense charged, and circumstantial evidence and the logical inferences therefrom are sufficient to support a conviction of even the most serious crime. *State v. Scott*, 285 Kan. 366, 372, 171 P.3d 639 (2007). However, the State cannot evade its responsibility to present evidence that Liberty Middle School was being used " *'for student instruction or attendance or extracurricular activities of pupils enrolled in kindergarten or any of the grades one through 12.'* " (Emphasis added.) See K.S.A. 2007 Supp. 65-4161(d); *Star*, 27 Kan. App. 2d at 936; see also *State v. Perez-Rivera*, 41 Kan. App. 2d 579, 582-83, 203 P.3d 735 (2009) (jury could not infer from witness' physical appearance that she was underage at the time of encounter with defendant). Despite the name of the building, districts close buildings or use them for different purposes that may not qualify under the statute.

Based on the reasoning of *Star* and *West*, the State failed to present sufficient evidence that Witten sold methamphetamine within 1,000 feet of a school as defined in K.S.A. 2007 Supp. 65-4161(d). However, there was ample evidence that Witten sold methamphetamine as alleged by the State, and Witten does not contend otherwise on appeal. " 'Where a defendant has been con-

victed of the greater offense but evidence supports only a lesser included offense, the case must be remanded to resentence the defendant for conviction of the lesser included offense.' *State v. Kingsley*, 252 Kan. 761, 782, 851 P.2d 370 (1993)." *Wilt*, 273 Kan. at 278.

Accordingly, Witten's conviction for the sale of methamphetamine within 1,000 feet of a school is set aside and the case is remanded for Witten to be resentenced for the lesser included offense of sale of methamphetamine.

*The prosecutor did not commit reversible misconduct in closing argument*

Witten claims the prosecutor committed misconduct during the closing arguments of the jury trial in case No. 08CR89. Witten contends the prosecutor improperly appealed to the jury's sense of community, vouched for a State's witness, and commented on facts not in evidence. Accordingly, Witten claims his right to a fair trial was violated.

"Allegations of prosecutorial misconduct require a two-step analysis. First, the appellate court must determine whether the comments were outside the wide latitude allowed in discussing the evidence. Second, the appellate court must decide whether those comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial, thereby requiring reversal. *State v. Elnicki*, 279 Kan. 47, 58, 105 P.3d 1222 (2005) (quoting *State v. Tosh*, 278 Kan. 83, 85, 91 P.3d 1204 [2004]). We have applied the test to prosecutorial action in contexts beyond mere comment on the evidence. [Citation omitted.]." *State v. White*, 284 Kan. 333, 337-38, 161 P.3d 208 (2007).

In the second part of the two-step analysis, the appellate court considers three factors to determine whether a new trial should be granted. The court must determine (1) whether the misconduct is gross and flagrant; (2) whether the misconduct reflected ill will on the prosecutor's part; and (3) whether the State's evidence is of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors. No one of these factors is individually controlling. Before the third factor can ever override the first two factors, the reviewing court must be able to say that the harmlessness tests of both K.S.A. 60-261 (inconsistent

with substantial justice) and *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (finding beyond reasonable doubt that the error had little, if any, likelihood of having changed the results of the trial), have been satisfied. *State v. Bryant*, 285 Kan. 970, Syl. ¶ 2, 179 P.3d 1122 (2008).

Witten takes issue with various comments made by the prosecutor during closing argument. First, Witten complains of the prosecutor's comments at the conclusion of his argument as follows:

"We know about the drug activities. We know things are going on. We hear about methamphetamines and now we're addressing a real problem. We're addressing a real situation. Somebody in our community is selling methamphetamines. Now it's up to you and I ask you to find Mr. Witten guilty on both counts."

Witten asserts these comments were designed to inflame the prejudices of the jury and asking the jury to protect the community.

A prosecutor should not make statements intended to inflame the prejudices of the jury or to divert the jury's attention from its duty to decide the case based on the evidence and the controlling law. *State v. Tosh*, 278 Kan. 83, 90, 91 P.3d 1204 (2004). The Supreme Court has held that a prosecutor's comment that " '[w]e don't want people making meth in our communities' " and a comment regarding preventing " 'people from making meth in our community' " were improper in that such comments inferentially asked the jury to render a verdict to protect the community. *State v. Finley*, 273 Kan. 237, 245, 42 P.3d 723 (2002); see also *State v. Green*, 254 Kan. 669, 684-85, 867 P.2d 366 (1994) (finding the statement " '[w]hat you decide will be what our community stands for' " improper); *State v. Ruff*, 252 Kan. 625, 631, 847 P.2d 1258 (1993) (improper for State to urge jury to "not allow [the defendant's alleged] conduct to be tolerated in our county"); *City of Dodge City v. Ingram*, 33 Kan. App. 2d 829, 837, 839-40, 109 P.3d 1272 (2005) (finding statement that jury is the " 'conscience of the community' " improper). We believe the prosecutor's statements were improper and intended to appeal to the passions of the jurors.

The prosecutor's comments also injected facts not in evidence. None of the police witnesses testified that the sale of methamphetamine was a serious issue in Pratt, Kansas. In its brief, the

State asserts the prosecutor was simply "[stating] the obvious." A fundamental rule in closing arguments requires prosecutors to confine their comments to matters in evidence. *State v. Richmond*, 289 Kan. 419, 440-41, 212 P.3d 165 (2009) (citing *State v. Baker*, 281 Kan. 997, Syl. ¶ 11, 135 P.3d 1098 [2006]). Granted, a prosecutor is allowed considerable latitude in discussing the evidence and drawing reasonable inferences from that evidence. *Richmond*, 289 Kan. at 441. However, there was no evidence from which to infer that the sale of methamphetamine was a serious problem in the Pratt community, and we conclude the remarks were improper and intended to appeal to the passions of the jurors.

Because we have determined the comments thus far noted were outside the wide latitude allowed to the prosecution in discussing evidence, we must next decide whether those comments prejudiced the jury and denied Witten a fair trial. We believe this to be a very close issue. Our appellate courts have repeatedly reminded prosecutors to abstain from making the comments that appeal to the passions of jurors. Prosecutors have to know by now that an argument exhorting jurors to be the conscience of the community is highly improper. Likewise, informing the jury with conspiratorial "we know" statements about community drug activities, what is going on, and drug activity in the community, is likewise highly improper.

Recognizing the many forceful and unequivocal published opinions of our appellate courts disapproving of such comments, we determine the prosecutorial misconduct must be considered gross and flagrant. The second factor is whether the prosecutor's misconduct demonstrates ill will. We are mindful the Supreme Court has found ill will when the prosecutor's statements were intentional and not made in good faith. *Tosh*, 278 Kan. at 94. Nevertheless, we are persuaded by the reasoning expressed in *State v. Miller*, 284 Kan. 682, 719-20, 163 P.3d 267 (2007), that a finding of ill will would be improvident. Finally, we conclude under the third factor that the State's evidence is of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of the jurors. Hence, we conclude under the facts of this

case that the prosecutorial misconduct constitutes harmless error under K.S.A. 60-261 and *Chapman*.

Witten also complains about the prosecutor's closing statements regarding Liberty Middle School. In his remarks, the prosecutor stated: "All of this happened right by Liberty Middle School *and we all know what happens there. That's where we send our 7th, 8th, 6th, 7th, 8th* [sic] *graders to be educated.*" (Emphasis added.) Although the detective testified the transactions occurred within 1,000 feet of "Liberty Middle School" which was operated by "USD 382," there was no evidence presented that the building was used for educational purposes for students between kindergarten and the 12th grade. Such evidence must be presented at trial to prove the necessary element of the criminal offense. A jury is not permitted to use its own knowledge to establish an element of the crime. See *Star*, 27 Kan. App. 2d at 936. Because we have concluded for the reasons previously discussed that Witten's conviction for the sale of methamphetamine within 1,000 feet of a school must be vacated, we fail to see how the above comments would support the grant of a new trial.

Finally, Witten complains the prosecutor vouched for his own witnesses by commenting on Detective Ward's testimony—stating he did a "pretty good job of testifying." Detective Ward made mistakes in his paperwork concerning dates and times of the offenses charged. Ward explained that he had to type his own reports but that his testimony at trial was accurate as to the series of events. We agree with the State that the complained-of statements made in rebuttal were responsive to the defendant's closing argument and were made in the context of the date and time errors on reports. Additionally, Ward's testimony regarding the underlying events was substantially corroborated by the testimony of Lieutenant Walker and Sturgeon. We conclude the statement did not constitute vouching or prejudice Witten's right to a fair trial.

*Witten did not establish good cause to withdraw guilty pleas*

With respect to his convictions in case No. 08CR276, Witten argues on appeal that the district court abused its discretion in denying his motion to withdraw his guilty pleas for good cause

shown filed pursuant to K.S.A. 22-3210(d). However, on appeal Witten fails to raise any issue that was the subject of his motion or the district court's subsequent denial. An issue not raised in the appellate brief is deemed abandoned. *State v. Martin*, 285 Kan. 994, 998, 179 P.3d 457, *cert. denied* 555 U.S. 880, 129 S. Ct. 192 (2008).

Instead, Witten's claim on appeal is based on statements he made during allocution. At that time, Witten contended his second attorney, Sam Kepfield, pressured him into pleading guilty. In addition, Witten claims the district court failed to make adequate findings of fact and conclusions of law as to whether Kepfield unduly pressured him to plead guilty.

There is an obvious disconnect between the evidence offered in Witten's motion to withdraw his pleas and his statements made during allocution. Witten waited until allocution to allege his pleas were coerced. We conclude Witten did not properly present his unsubstantiated allegation to the district court. Secondly, Witten did not object to inadequate findings of fact before the district court. Consequently, this issue was not preserved for appeal. See *Gilkey v. State*, 31 Kan. App. 2d 77, 77-78, 60 P.3d 351, *rev. denied* 275 Kan. 963 (2003).

There are also multiple reasons to conclude Witten's statements made in allocution were untrustworthy. First, during the prior plea hearing, the court asked Witten if he understood the plea agreement, if he waived arraignment to the amended charge, and if he had visited with counsel regarding the potential penalties with a severity level 4 drug felony. Witten reported he did not have any questions about the sentences. Witten also reported he had seen the written acknowledgment of rights and that he did not have any questions about the matters set forth in the form. He also testified that no other promises had been made to him, including that if he pled guilty it would result in better treatment from the court. Witten's only hesitation was when the State represented the amount of methamphetamine involved was 1.63 grams rather than 1 gram; the court clarified that the plea agreement provided Witten would plead guilty to possessing at least 1 gram. The court then found Witten guilty of the charges.

Second, Witten's claim of coercion was not mentioned in his motion to withdraw his pleas or during the evidentiary hearing on the motion. Eckelman had represented Witten for 5 months and had obtained several continuances before filing the motion to withdraw pleas. Notwithstanding that a claim of coercion will frequently be the very essence of such a motion, it is apparent Witten either did not mention his concern to Eckelman or deem it important enough to properly present at the hearing.

Based on the totality of the circumstances, Witten's belated attempt to inject a claim of coercion during allocution was untimely and untrustworthy. We conclude Witten failed to demonstrate good cause to support the setting aside of his guilty pleas.

*Determination of Witten's criminal justice history does not run afoul of Apprendi v. New Jersey*

Finally, Witten contends the district court violated his constitutional due process rights by enhancing his sentence by considering his prior convictions without proving those convictions to a jury beyond a reasonable doubt. He relies on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Witten concedes our Supreme Court rejected this argument in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), but includes this issue to preserve it for federal review.

This court is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). Because our Supreme Court continues to adhere to its holding in *Ivory*, see, *e.g., State v. Raschke*, 289 Kan. 911, 912, 219 P.3d 481 (2009), this argument fails.

*Conclusion*

In case No. 08CR276, we affirm. In case No. 08CR89, we affirm in part, reverse in part, and remand with directions. Witten's conviction and sentence for the sale of methamphetamine within 1,000 feet of a school is vacated; on remand, the journal entry of judgment is to be corrected to show Witten's conviction of the lesser included offense of the sale of methamphetamine and he is to be resentenced; Witten's conviction and the sentence imposed for

possession of a controlled substance without a drug tax stamp are affirmed.