NOT DESIGNATED FOR PUBLICATION

No. 113,636

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER BROOKS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed March 3, 2017. Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BUSER, P.J., ATCHESON and POWELL, JJ.


ATCHESON, J.:  Defendant Christopher Brooks' friend arranged to purchase methamphetamine from him in a controlled buy that law enforcement officers set up. Brooks went to trial in Lyon County District Court on multiple drug charges arising from the buy, and the jury convicted him. Brooks asserts, among other trial errors, that the jury should have been allowed to consider entrapment as a defense, the State impermissibly prosecuted him on multiplicitous crimes, and the district court mishandled a stipulation. We have reviewed each of Brooks' claimed points of error and find no reason to reverse any of the guilty verdicts or the judgment of conviction.

1

After being arrested on a bench warrant in April 2014 for failing to appear in municipal court, Gregory Webster offered to help narcotics officers with the Emporia Police Department by purchasing illegal drugs in a monitored transaction. Webster told the officers he could buy methamphetamine from Brooks. The officers immediately arranged to have the warrant withdrawn and Webster's court date postponed. So later the same day, Webster texted Brooks to invite him to dinner that evening. Webster asked Brooks to bring chicken to grill and a "dub" that he would buy. According to trial testimony, the term "dub" was common parlance among drug traffickers for $20 worth of methamphetamine.

During the afternoon, Webster continued to text Brooks to make sure he was coming over. The messages were not introduced at trial. But from the evidence in the record, we infer some of the messages referred to both the chicken and the drugs. Brooks continued to indicate he would be there. To set up the controlled buy from Brooks, the narcotics officers searched Webster to make sure he had no illegal drugs and gave him identified money to be used to pay for the methamphetamine. They and other law enforcement officers then accompanied Webster to his apartment. The narcotics officers hid in a darkened hallway from which they could watch Webster in the kitchen of his apartment. The other officers positioned themselves outside the apartment.

Brooks entered the apartment through a back patio door and went into the kitchen with Webster. According to the narcotics officers' trial testimony, Webster and Brooks spoke briefly. Brooks then handed Webster a small plastic bag, and Webster gave Brooks two identified $10 bills. The narcotics officers immediately came out of hiding, ordered Brooks to the floor, handcuffed him, and read him his *Miranda* rights. The other officers entered the apartment. An officer searched Brooks. Brooks had a glass pipe of the type

used with illegal drugs in his pocket. He also had two cell phones and a charger. The officers recovered the buy money and the plastic bag with the methamphetamine.

A detective took custody of Brooks and drove him to the county jail to be booked. On the way, the detective told Brooks it would be in his best interest to disclose any contraband he might have before being searched at the jail. Brooks told the detective he had a plastic bag with methamphetamine in his hat. At the jail, the detective found the plastic bag containing what looked like about a gram of methamphetamine.

An analyst with the Kansas Bureau of Investigation tested the contents of the plastic bag Webster received from Brooks in the controlled buy. According to the lab report, the contents consisted of 1.1 grams of methamphetamine. Nothing in the record indicates the contents of the plastic bag Brooks had in his hat were tested.

Webster's apartment was within 1,000 feet of William Allen White School, a public elementary school in Emporia.

During Brooks' 2-day trial in September 2014, the jury considered three charges: (1) distribution of methamphetamine within 1,000 feet of school property, a felony; (2) possession of methamphetamine with the intent to distribute within 1,000 feet of school property, a felony; and (3) possession of drug paraphernalia, a misdemeanor. Several of the law enforcement officers involved in the controlled buy testified during the trial. Webster did not. Brooks testified in his own defense. He admitted having the methamphetamine found in his hat. But he denied the methamphetamine involved in the controlled buy belonged to him. Brooks told the jury Webster had both the drugs and the money. He disclaimed any knowledge of the drug transaction until the police rushed in and arrested him.

3

The jury convicted Brooks of the distribution and paraphernalia charges and a lesser felony of possession with intent to distribute less than 1 gram of methamphetamine within 1,000 feet of a school. At a later hearing, the district court ordered Brooks to serve 73 months in prison and 36 months on postrelease supervision, reflecting a standard guidelines sentence for the distribution conviction. The district court ordered Brooks to concurrently serve lesser sentences on the other convictions. The district court directed that Brooks serve the sentence in this case consecutive to any incarceration ordered in two earlier cases in which Brooks had been placed on probation. Brooks has timely appealed.

LEGAL ANALYSIS

Brooks raises four points on appeal: (1) The district court erred in refusing to instruct the jury on entrapment as a defense to the charge of distributing methamphetamine; (2) the convictions for distributing methamphetamine and possession with intent to distribute methamphetamine are multiplicitous; (3) the district court improperly accepted a stipulation to a common element of the distribution and possession charges without securing a waiver from Brooks of his right to jury trial on that element; and (4) the State failed to prove the requisite specific intent to support the possession with intent to distribute charge. We address the contentions in that order, supplementing the introductory recitation of the facts and procedural history.

*Entrapment Defense*

In reviewing a challenge to the district court's failure to give a jury instruction, an appellate court undertakes a sequential examination of related considerations addressing issue preservation, instruction appropriateness, and impact of any error. *State v. Brown*, 300 Kan. 542, 554-55, 331 P.3d 781 (2014); *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012). The steps in the inquiry have been described this way: "(1)

4

reviewability considering preservation of the issue at trial and jurisdiction; (2) legal appropriateness of the instruction; (3) factual support in the evidence for the instruction; and (4) harmlessness of any actual error." *State v. Franco*, 49 Kan. App. 2d 924, Syl. ¶ 1, 319 P.3d 551 (2014), *rev. denied* 301 Kan. 1049 (2015); see *Plummer*, 295 Kan. 156, Syl. ¶ 1. We follow that path.

Brooks requested that the district court give an entrapment instruction to the jury outlining a defense to the charge of distributing methamphetamine. The district court declined, a decision to which Brooks never acceded. The issue, therefore, has been properly preserved.

In considering the legal appropriateness of an entrapment defense and, hence, a pertinent jury instruction, we first outline the theory behind entrapment as a shield to criminal prosecution. Entrapment has been codified in the Kansas Criminal Code as affording a defense when the defendant's "criminal conduct was induced or solicited by a public officer or his agent for purposes of obtaining evidence to prosecute" the defendant. K.S.A. 2016 Supp. 21-5208. Entrapment rests on the policy notion that government entities and their agents should not foment unlawful conduct. See *Jacobson v. United States*, 503 U.S. 540, 553-54, 112 S. Ct. 1535, 118 L. Ed. 2d 174 (1992); *State v. Hunter*, 241 Kan. 629, 643, 740 P.2d 559 (1987) ("[E]ntrapment has evolved in recent years as a curb to seriously improper law enforcement conduct."). So if government agents entreat a person not otherwise disposed toward criminal behavior to break the law, the ostensible lawbreaker should not be held to answer for the wrongful act. The principal policy objective is to discourage that sort of government action and, in turn, to advance the idea that law enforcement agents should investigate criminal conduct rather than precipitate it.

Consistent with that purpose, a defendant need not show that government agents effectively broke his or her free will, thus essentially compelling the commission of the crime. Government agents may entrap a defendant by persuading him or her—through

5

barbed pressure or smooth coaxing—to abandon an initial refusal in favor of willing participation in the suggested criminal activity. See *State v. Rogers*, 234 Kan. 629, 632, 675 P.2d 71 (1984) (entrapment constitutes "an avoidance" in which defendant submits "law enforcement officers . . . implanted the [criminal] idea in his otherwise innocent mind by suggestion or solicitation"). The defense, however, does not apply when the agent "merely afford[s] an opportunity" to someone already inclined to criminality. K.S.A. 2016 Supp. 21-5208(a); see *State v. Jones*, 271 Kan. 201, 204, 21 P.3d 569 (2001) (discussing circumstances supporting entrapment defense); *State v. Jordan*, 220 Kan. 110, 116, 551 P.2d 773 (1976) (same). The government agents, therefore, must do more than simply offer a chance to take part in a criminal enterprise but need not so coerce the defendant that he or she acts without volition. Entrapment shields the reluctant-though-impressionable delinquent but not the criminally minded opportunist.

Based on the policy objectives underlying entrapment, the Kansas Supreme Court has held that defendants generally cannot raise the defense if they otherwise deny any involvement in the charged crime. *Hunter*, 241 Kan. at 643; *Rogers*, 234 Kan. at 633. That is, a defendant may not simultaneously disclaim participating in the criminal act and invoke as a defense a public policy designed to punish government agents for having induced his or her participation. Entrapment, thus, represents an exception to the general rule that a defendant may present legally or factually inconsistent defenses. *Hunter*, 241 Kan. at 643. The exception may be justified on equitable grounds in the sense that a defendant ought not be allowed to rely on entrapment—a defense premised on the impermissible conduct of government agents—simply as a backup if the factfinder determines his or her primary defense to be unworthy of belief.

Brooks acknowledges the court's treatment of entrapment and concedes he has relied on entrapment as an alternative defense in this case, since he denied distributing methamphetamine. He claimed Webster had the money and the plastic bag with the methamphetamine all along and no exchange ever took place. Under the circumstances,

6

an entrapment instruction would not have been legally appropriate. Brooks argues that in decisions after *Rogers* and *Hunter*, the Kansas appellate courts have recognized a criminal defendant may present alternative and even contradictory affirmative defenses. But none of those cases involved entrapment, which depends upon a precise public policy that distinguishes it from other affirmative defenses.

Brooks also cites *State v. Anderson*, 287 Kan. 325, 330, 197 P.3d 409 (2008), as support for his position. In *Anderson*, the defendant wanted to assert a defense of compulsion and on appeal challenged the standard the district court used to determine if he had presented sufficient evidence to warrant a jury instruction. The court noted the general rule that a defendant is entitled to an instruction on a defense supported in the evidence and went on to clarify the amount of evidence necessary to cross that threshold. Nowhere in that discussion, however, did the court presume to address entrapment specifically—a defense that had nothing to do with Anderson's case. The court mentioned that its retooled evidentiary standard supplanted what had been used in a number of earlier cases, including *State v. Farmer*, 212 Kan. 163, 510 P.2d 180 (1973), an entrapment case. *Anderson*, 287 Kan. at 330, 334. The *Anderson* court, however, did not purport to consider, let alone change, the limitation on entrapment recognized in *Hunter*, *Rogers*, and other cases requiring that the defendant admit participating in the crime. In short, *Anderson* does not advance Brooks' position.

We are constrained to follow *Rogers* and the authority on which it relies. The discussion in *Hunter*, though highly instructive, is technically dicta and, thus, not binding authority. See *State v. Hankins*, 304 Kan. 226, 237, 372 P.3d 1124 (2016) ("discussion . . . was dicta, which binds nobody"). As we have indicated, based on that precedent, Brooks could not assert an entrapment defense, and his requested jury instruction was legally inappropriate.

Although our determination on legal appropriateness disposes of the point, we consider briefly the factual support for Brooks' entrapment defense. A defendant typically is entitled to an instruction on a theory of defense if there is sufficient evidence for a jury to reasonably find for him or her on that defense. *State v. Hilt*, 299 Kan. 176, 184, 322 P.3d 367 (2014). That means the evidence has enough substance that a jury properly could entertain a reasonable doubt as to the defendant's guilt. See K.S.A. 2016 Supp. 21-5108(c); *State v. Chavez*, No. 108,955, 2014 WL 1795760, at *2 (Kan. App. 2014) (unpublished opinion), *rev. denied* 301 Kan. 1048 (2015) ("[A] criminal defendant need only create reasonable doubt with his or her evidence of an affirmative defense, such as self-defense or entrapment, to be acquitted.").

Brooks, however, failed to marshal sufficient evidence at trial to factually support an entrapment defense. First, of course, Brooks' own version of the events was incompatible with his being entrapped to distribute methamphetamine. Brooks told the jurors he didn't physically give any methamphetamine to Webster. He generally disclaimed having any idea Webster wanted him to bring methamphetamine to their dinner and specifically pleaded ignorance about the meaning of the term "a dub." The trial evidence shows that Webster and Brooks exchanged multiple text messages during the afternoon leading up to the controlled buy. Webster did not testify, so the jurors didn't have his version. Nor did they get to see the actual text messages. But a law enforcement officer involved in the arrest testified that Webster asked Brooks to come with chicken and a dub—a slang term for $20 worth of methamphetamine, according to the officer.

Webster acted as a government operative in arranging the controlled buy. The trial evidence, however, failed to show that Webster or any other government agent induced Brooks to participate in the sale of methamphetamine despite some initial reluctance or outright resistance on his part. The available evidence portrayed Brooks as a willing participant from the outset, assuming he participated at all. Accordingly, an entrapment

8

instruction was factually unsupported, an independent basis to uphold the district court's decision.

Having found an entrapment instruction both legally inappropriate and factually unsupported, we need not continue the analysis to weigh the impact of any claimed error in instructing the jury. There was none.

*Multiplicitous Convictions*

Brooks contends his separate convictions for distribution of methamphetamine and for possession of methamphetamine with the intent to distribute are impermissibly multiplicitous. According to Brooks, he is being twice punished for one criminal wrong.

Multiplicity arises when the State charges a single criminal act in two or more counts, thereby exposing the defendant to pyramiding punishments for that one offense. *State v. Weber*, 297 Kan. 805, 808, 304 P.3d 1262 (2013) (citing *State v. Thompson*, 287 Kan. 238, 244, 200 P.3d 22 [2008]). Multiple convictions and punishments for one criminal act violate a defendant's protection against double jeopardy contained in the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. *Weber*, 297 Kan. at 808. Whether two crimes are multiplicitous typically presents a question of law. *State v. Colston*, 290 Kan. 952, 971, 235 P.3d 1234 (2010).

Brooks has raised the multiplicity argument for the first time on appeal. But the Kansas appellate courts have considered multiplicity challenges initially presented on appeal because doing so serves the ends of justice and prevents the denial of a fundamental right—one of the bases for taking up a point not presented to the district court. *Weber*, 297 Kan. at 809; *Colston*, 290 Kan. at 971. We do so here.

But having done so, we see no multiplicity problem. The governing criminal statute prohibits a person from "distribut[ing] or possess[ing] with the intent to distribute" particular illegal drugs, including methamphetamine. K.S.A. 2016 Supp. 21-5705(a)(1). Brooks says the statutory language defines a single crime that may be committed in different ways. From that premise, which seems sound, he posits that his conduct at Webster's home entailed a discrete criminal episode that amounted to one violation of K.S.A. 2016 Supp. 21-5705(a)(1).

The argument, however, doesn't conform to the facts, as found by the jury. The jury rejected Brooks' claim that Webster already had the methamphetamine related to the sale. So in assessing the multiplicity argument, we must view the facts this way: Brooks arrived at Webster's apartment with two plastic bags of methamphetamine; he sold one to Webster for $20 and retained the other—the one in his hat—for some other purpose. Brooks told the jury he was an addict and intended to use the methamphetamine in his hat. The jury was free to believe Brooks' explanation or not.

The sale to Webster supported a charge of distribution of that methamphetamine. But Brooks kept some methamphetamine. His retention of the second plastic bag of methamphetamine amounted to a separate crime—either simple possession or possession with intent to distribute *that particular methamphetamine*, depending on what he planned to do with it. See K.S.A. 2016 Supp. 21-5706 (criminalizing possession of specified drugs). The crimes occurred at roughly the same time and in the same place, but they were distinct violations. So they could be punished separately. Were the law as Brooks contends, a drug trafficker making a sale could be charged only with that sale and not with anything related to the unsold portion of his or her inventory. That result seems stupefying. We, therefore, reject Brooks' multiplicity argument.

*Stipulation Regarding School*

As we have pointed out, Brooks was charged with distributing methamphetamine within 1,000 feet of school property and with possession with intent to distribute within 1,000 feet of school property. The ownership and use of the property and its proximity to the criminal act form an element of each of those offenses that enhances the presumptive punishment. See K.S.A. 2016 Supp. 21-5701(r) (term "school property" used in criminal statutes related to controlled substances limited to buildings used by school district for "student instruction or attendance or extracurricular activities" for kindergarten or any grades one through 12); K.S.A. 2016 Supp. 21-5705(d)(5) (presumptive penalty for distribution of or possession with intent to distribute controlled substance increased by one severity level if within 1,000 feet of "school property"). The prosecutor and Brooks' trial lawyer entered into a stipulation presented to the jury that "the alleged offenses" occurred within 1,000 feet of William Allen White School, owned by Unified School District No. 253 and "used for K-5 student instruction." The only other evidence the State presented on that element was a passing reference from one of the law enforcement officers that Webster's apartment was less than 1,000 feet from William Allen White School.

As we have indicated, Brooks contends the district court's handling of the stipulation compromised his right to a jury trial. Some background principles help frame the contention. Criminal defendants have a fundamental constitutional right to have their cases tried to juries, as provided in the Sixth Amendment to the United States Constitution. *State v. Parker*, 301 Kan. 556, 563, 344 P.3d 363 (2015). After consultation with his or her lawyer, a criminal defendant must personally make the decision to waive a trial to a jury or to a judge. See *Taylor v. Illinois*, 484 U.S. 400, 417-18 & n.24, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988). The lawyer cannot make the choice. *State v. Carter*, 270 Kan. 426, 439, 14 P.3d 1138 (2000); *State v. Irving*, 216 Kan. 588, 590, 533 P.2d 1225 (1975). To secure a proper waiver of jury trial, the district court must inform a defendant

11

of that right and have the defendant personally give up the right on the record in open court or in writing. 216 Kan. at 590. Conversely, a lawyer has the authority to make tactical decisions before and during a criminal trial even without the defendant's assent. *Faretta v. California*, 422 U.S. 806, 820, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) ("[W]hen a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas."); *Carter*, 270 at 438-39 ("[T]actical decisions" such as filing motions, selecting jurors, calling and examining witnesses are the sole province of the lawyer exercising "professional skill and judgment.").

On appeal, Brooks argues the stipulation amounted to an impermissible waiver of his right to jury trial and taints those convictions. We assume Brooks' premise of error and reject his conclusion. We find any error to have been harmless. Brooks, therefore, has not shown grounds for reversing the convictions. The issue, however, is less than straightforward given the substance of the stipulation and how the district court applied it.

Here, Brooks and the State stipulated to historical facts—the ownership, use, and proximity of William Allen White School. Those facts bore on a particular element of the charged offenses. The stipulation was uncontroverted and represented virtually the only evidence on that point admitted during the trial. Ordinarily, jurors consider stipulated historical facts along with all of the other trial evidence in assessing a defendant's guilt, as measured against the elements of the offense. See *State v. Longoria*, 301 Kan. 489, 517-18, 343 P.3d 1128 (2015); PIK Crim. 4th 50.050 ("[Y]ou should consider and weigh everything admitted into evidence . . . includ[ing] . . . admissions or stipulations of the parties[.]"). With an unrebutted stipulation setting out facts effectively establishing an element of a crime, the jurors in a given case presumably would readily find the State had proved that element and move on to other issues.

12

But the district court did not treat the stipulation that way. Rather, the district court apparently used it as a stipulation of legal effect. A stipulation of legal effect entails the parties' agreement to a legal determination or conclusion that withdraws an issue from the factfinder's consideration. See *United States v. Jones*, 108 F.3d 668, 671 (6th Cir. 1997); *United States v. Mason*, 85 F.3d 471, 472-73 (10th Cir. 1996). For example, in a tort action for personal injuries, a defendant may admit the plaintiff's allegations of wrongful conduct, effectively stipulating to liability and leaving only the issue of compensable damages for the jury to decide. See, *e.g.*, *McBride v. Dice*, 23 Kan. App. 2d 380, 380, 930 P.2d 631 (1997); *Adams v. City of Chicago*, 798 F.3d 539, 541 (7th Cir. 2015). Here, presumably based on the stipulation, the district court simply excluded the ownership, use, and proximity of the school building from the jury instructions identifying the elements the State had to prove to convict Brooks of distribution and possession with intent to distribute within 1,000 feet of school property. See *State v. Witten*, 45 Kan. App. 2d 544, 550-51, 251 P.3d 74 (conviction for drug offense within 1,000 feet of school property requires proof building regularly used for instruction of students or their extracurricular activities), *rev. denied* 293 Kan. 1114 (2011); PIK Crim. 4th 57.020 (instruction includes sample language for drug crime near school property). In other words, the jurors were never asked to consider and never decided whether the offenses occurred within 1,000 feet of school property.

The district court neither discussed the stipulation with Brooks nor secured his personal assent to it. So the district court did not explain to Brooks that the stipulation would be used to remove an element of the charged crimes from the jurors' consideration. And the district court did not suggest the stipulation in any way compromised Brooks' right to a jury trial. Although Brooks appears to have signed the stipulation, as did his lawyer and the prosecutor, his signature imputes no particular meaning under these circumstances and certainly does not amount to an endorsement of the stipulation's legal effect. In short, Brooks submits that absent his informed agreement, the way the district court used the stipulation violated his constitutional right to jury trial.

13

Had the stipulation been treated strictly as one of historical fact, meaning the jurors could have considered it in determining whether the crimes took place within 1,000 feet of a school, we question whether the issue could be fairly characterized as a waiver of the right to a jury trial at all. For Brooks, the stipulation reflected a sound (and quite narrow) tactical decision. At oral argument, the prosecutor assured us that absent a stipulation regarding the school, she would have called a school district administrator as a witness at trial. The administrator would have testified the building was, indeed, owned by the district, and the testimony would have highlighted that elementary school pupils were taught there. All of that would satisfy the criteria for the enhanced punishment. See *Witten*, 45 Kan. App. 2d at 550-51.

But the testimony also would have accentuated facts that could not have favorably disposed the jurors toward Brooks. Conventional wisdom holds that a stipulation tends to draw less attention from jurors than would witness testimony. See *United States v. Grassie*, 237 F.3d 1199, 1210-11 (10th Cir. 2001); *United States v. Muse*, 83 F.3d 672, 678 (4th Cir. 1996). In addition, we understand the ownership and particular use of William Allen White School was not open to any real dispute. We, likewise, presume that to be true of the distance between the school and Webster's residence, since one of the law enforcement officers testified without contradiction that they were within 1,000 feet of each other. Brooks doesn't argue the ownership, use, or proximity of the school could have been reasonably refuted. So the tactical call by Brooks' lawyer to opt for a stipulation to those historical facts makes sense.

We see this stipulation of historical facts itself to be akin to other litigation decisions entrusted to the trial lawyer rather than to the criminal defendant personally. Its use as the body of trial evidence regarding William Allen White School is like a decision to softly cross-examine a sympathetic prosecution witness or to forgo any questions at all especially if the testimony were cumulative, effectively unimpeachable, or collateral.

14

And it is like a decision to decline a technically proper limiting instruction because the instruction would highlight for jurors a snippet of testimony they might otherwise simply gloss over. See *State v. Massengale*, No. 109,351, 2014 WL 349612, at *11 (Kan. App. 2014) (Atcheson, J., concurring), *rev. denied* 301 Kan. 1050 (2015). Were that the end of the matter, we would be disposed to put the stipulation in the column of decisions properly entrusted to a trial lawyer's professional judgment as an advocate. In turn, even though the facts bore on and effectively established an element of the crimes, the stipulation would not have impaired Brooks' right to a jury trial in a way that required his personal agreement.

But the use of the stipulation to remove an element of the charged crimes from the jurors' decisionmaking casts a different light on the issue. In a criminal case, a district court cannot direct a verdict of guilty no matter how overwhelming the government's evidence—doing so violates the defendant's Sixth Amendment right to jury trial. *Sullivan v. Louisiana*, 508 U.S. 275, 277, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) (citing *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572-73, 97 S. Ct. 1349, 51 L. Ed. 2d 642 [1977]; *Sparf v. United States*, 156 U.S. 51, 105-06, 15 S. Ct. 273, 39 L. Ed. 343 [1895]); *State v. Sisson*, 302 Kan. 123, 129-30, 351 P.3d 1235 (2015). That rule extends to individual elements of particular crimes. *Neder v. United States*, 527 U.S. 1, 12, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); *Sisson*, 302 Kan. at 129-30; *State v. Brice*, 276 Kan. 758, 772, 80 P.3d 1113 (2003). Nonetheless, criminal defendants may voluntarily relinquish the right to have a jury decide their guilt or innocence at all in favor of a trial to the judge alone or as part of a plea disposing of the case. It necessarily follows that a defendant may withdraw an element of a charged crime from the jury's consideration with the State's consent. The question here is how much, if any, input the defendant personally must have in *that* decision.

Through his argument, Brooks implicitly equates withdrawal of an element of a crime to the forbearance of a jury trial in its entirety. An argument could be made that

they differ only in degree—withdrawing all of the elements of every crime charged is either the same as or the essence of pleading guilty. But the comparison frays upon much inspection, and, as we discuss, the Kansas Supreme Court has rejected a similar argument made about trials to the district court based solely on stipulated facts. *White v. State*, 222 Kan. 709, 713, 568 P.2d 112 (1977).

Brooks, of course, had a jury trial. The State presented evidence. He testified in his own defense. The jurors sorted through all of that to determine if he had been proved guilty beyond a reasonable doubt, save for the ownership, use, and location of the school. That's not much like a guilty plea and the requisite waiver of a jury trial that accompanies it. Brooks really isn't complaining about the loss or relinquishment of the fundamental right to a jury trial but a limited intrusion or encroachment. So it is not self-evident that the same informed-consent requirements ought to apply. In short, a stipulation removing an element of a crime from the jury's consideration seems measurably less momentous than those core decisions a criminal defendant must personally make. See *State v. Hargrove*, 48 Kan. App. 2d 522, 534, 293 P.3d 787 (2013) (outlining decisions entrusted to criminal defendant personally). That seems especially so here, given the limited function of the stipulation and the relative insignificance of the particular element to Brooks' defense and in the overall context of the trial.

Brooks offers no general statement of the rule he suggests we apply. He says only that the district court should have advised him that the stipulation curtailed his right to jury trial and, therefore, should have secured his personal agreement to the stipulation. We have already indicated that we doubt such a rule to be required for stipulations to historical facts. The rule, however broadly or narrowly applied, creates potential problems Brooks doesn't address. Any judicial inquiry into a criminal defendant's personal understanding of his or her lawyer's decisions or the product of those decisions, such as a proposed stipulation, at the very least treads close to privileged attorney-client communication. In most instances, what a criminal defendant knows about his or her

16

lawyer's handling of the case comes from the lawyer.  The more times a district court is required to secure the personal approval of a defendant for his or her lawyer's conduct of the case, the greater the intrusion into that confidential professional relationship. The court inquiries risk disclosing strategic plans to the defendant's potential detriment and risk dampening candor between client and lawyer if the client believes he or she may have to reveal some of what has been discussed. In short, what Brooks suggests could drive a wedge between the defendant and his or her lawyer.

Brooks also doesn't explain precisely what a district court ought to do should a defendant disagree with his lawyer's strategic decision to stipulate to certain facts or evidence. He premises his claim of error here on the district court's failure to inquire at all. If the district court has to elevate the defendant's position over his or her lawyer's—as Brooks' contention would seem to require; otherwise the failure to inquire would be harmless because the district court could always side with the lawyer—then the defendant arguably would be engaged in self-representation as to that decision. But effectuating a criminal defendant's Sixth Amendment right to self-representation invokes another set of mandatory protocols. *Faretta*, 422 U.S. at 835 (criminal defendant exercising right to self-representation and concomitantly relinquishing right to counsel must do so knowingly and intelligently); *State v. Jones*, 290 Kan. 373, 376-77, 228 P.3d 394 (2010) (To insure the sufficiency of a criminal defendant's choice to represent himself or herself, a district court must advise the defendant of the pitfalls of abandoning the right to counsel.); see *Iowa v. Tovar*, 541 U.S. 77, 87-89, 124 S. Ct. 1379, 158 L. Ed. 2d 209 (2004). If Brooks were correct that a stipulation amounts to a defendant's focused waiver of his or her right to a jury as to the subject of the stipulation, it follows that a defendant may self-represent with respect to that narrow issue and necessarily does so should he or she disagree with trial counsel.

Ultimately, however, we need not plumb or resolve those potential problems. Nor, in this case, do we have to decide whether Brooks has presented a legally sound

17

argument. For purposes of resolving the issue, we *assume* he has, so the district court should have informed him about the legal effects of the stipulation, determined his personal position on it, and given that position controlling weight. The assumed error, however, does not automatically entitle Brooks to relief. Had Brooks made an uninformed waiver of his right to an entire jury trial as a prelude to a bench trial or a plea, that would be true. But Brooks received a jury trial on everything except a single element of two of the charges against him.

The assumed error left Brooks in the same position he would have occupied had the district court inadvertently omitted that element from the jury instructions. In that circumstance, the jurors never would have considered the element because they had (mistakenly) never been told about it. The omission compromises a defendant's constitutional right to jury trial, but the mistake may be reviewed for harmlessness. *Neder*, 527 U.S. at 18; *State v. Linn*, 251 Kan. 797, 802, 840 P.2d 1133 (1992). The error should be considered harmless only if the omitted element were "uncontested and supported by overwhelming evidence." *Neder*, 527 U.S. at 17; *State v. Richardson*, 290 Kan. 176, 182-83, 224 P.3d 553 (2010). The test for harmlessness, then, is twofold. Not only must the evidence bearing on the omitted element approach the irrefutable, a defendant effectively has to concede that component of the charged crime.

Here, the record supports a finding of harmless error. The ownership of the building and its use as an elementary school entailed essentially objective facts that could be easily proved through wholly disinterested witnesses. So Brooks' lawyer correctly recognized them to be essentially uncontestable in this case. Apart from the stipulation, a law enforcement officer testified to the proximity of the school and Webster's apartment—testimony Brooks didn't challenge. That simply underscores the point. Similarly, the very willingness of Brooks' lawyer to stipulate to those historical facts indicates they weren't refutable and, thus, provided no avenue to reasonable doubt. Given the particular facts and their ease of proof, we conclude the stipulated facts were both

18

uncontestable and uncontested in this case. The stipulation, as the substance of the information given the jurors about those historical facts, similarly rendered the trial evidence on the element overwhelming and undisputed. That wouldn't be true of a stipulation reflecting only part of the admitted evidence on a given point, especially if the other evidence conflicted with the stipulation. See, *e.g.*, *United States v. Lee*, 834 F.3d 145, 159 n.8 (2d Cir. 2016) (parties stipulate to testimony of absent witness); *United States v. Urena*, 73 F. Supp. 3d 291, 305 (S.D.N.Y. 2014) (same).

On appeal, Brooks doesn't argue any actual prejudice and implicitly submits the mere existence of the error he defines requires a reversal of his convictions on the distribution and possession with intent to distribute charges. Even granting the error, which we have done merely as a forensic device, Brooks requests too generous a remedy. The nature of the presumed error requires an evaluation for harmlessness. That review of the trial record demonstrates the narrow factual issue covered in the stipulation would not have furnished even a colorable defense. And the decision to stipulate itself reflected the futility of trying to base a defense on that element. Those considerations together render any error harmless under the stringent standard required by *Neder* and *Richardson*.

In the interests of completeness, we mention three cases—one Brooks cites and two he doesn't—that discuss affiliated issues. They do not, however, directly govern the way in which a district court should handle either a stipulation covering historical facts or a stipulation removing an element from the jurors' consideration to preserve a criminal defendant's right to jury trial. The latter reflects the issue Brooks raises and we avoid by presuming error and then finding the error harmless.

Brooks relies, in part, on *State v. Lee*, 266 Kan. 804, 814, 977 P.2d 263 (1999), in which the Kansas Supreme Court held the State could not refuse a proffered stipulation from a defendant charged with being a felon in possession of a firearm that he or she, in fact, had been convicted of a felony. The stipulation, thus, precluded the State from

19

introducing evidence showing the precise felony or relating any facts about that earlier conviction. The court cast a deliberately narrow holding applying only to charges of criminal possession of a firearm or a similar offense in which the defendant's "status" as a convicted felon forms a legally required part of the State's proof. 266 Kan. at 814. The *Lee* decision also rests on evidence law alone and does not purport to discuss stipulations as potential impingements on a defendant's Sixth Amendment right to jury trial. The court concluded that because the State need only prove a conviction for some felony, the nature and circumstances of the particular felony were irrelevant as an evidentiary matter and the information, in many instances, would be unduly and impermissibly prejudicial to the defendant. 266 Kan. at 813-14.

Brooks zeros in on a concluding paragraph in *Lee* where the court stated the district court should inquire of the defendant personally and determine that he or she approves of the stipulation and waives any right to have that element of the charged crime proved beyond a reasonable doubt. 266 Kan. at 815-16. The court went on to state the district court could instruct the jurors that they treat the element of the defendant's status as a convicted felon proved by the parties' agreement reflected in the stipulation. 266 Kan. at 816. The court, however, never otherwise discussed or explained why a district court ought to direct the jury to find for the State on the element of a felony conviction based on a stipulation of historical fact or the concomitant need to secure a waiver from the defendant. The court referred to "the analysis" in *Brown v. State*, 719 So. 2d 882, 889 (Fla. 1998). Although the Florida Supreme Court crafted the same approach to establishing a previous felony in comparable felon-in-possession cases, it never provided a rationale for its treatment of the stipulation in that manner. 719 So. 2d at 889.

At best, *Lee* offers limited persuasive authority for Brooks' argument that the district court should have informed him about the legal effect of the stipulation regarding the school and obtained his personal consent to it. Had the stipulation been used as one of historical fact and simply submitted to the jury as evidence, *Lee* would be inapposite. In

20

*Lee*, the stipulation was treated as a basis for directing the jurors to find for the State on the element of the defendant's past felony conviction. Here, of course, the district court went even further and removed the element of the school's ownership, use, and proximity from the jurors' consideration at all. But *Lee* neither says a district court's failure to inquire of the defendant amounts to error, although that might be inferred, nor defines just what right would be compromised. And *Lee* plainly does not suggest how such an error ought to be remedied. Arguably, *Lee* does no more than set forth some "best practices" in its concluding directive. See, *e.g.*, *State v. Key*, 298 Kan. 315, 322-23, 312 P.3d 355 (2013) (court "close[s] with brief comments on future best practices" regarding procedures for challenging past driving-under-the-influence convictions used for sentencing enhancement).

In *White*, 222 Kan. 709, White filed a 60-1507 motion challenging his murder conviction on the grounds the district court should have treated his bench trial on an eight-paragraph stipulation of facts as the functional and legal equivalent of a guilty plea. The court held that the issue wasn't properly raised in a 60-1507 motion but addressed the merits anyway, since White never filed a direct appeal from his conviction. 222 Kan. at 712. The stipulation and bench trial, which immediately followed White's waiver of jury trial, were part of a negotiated disposition of multiple charges that White's retained lawyer worked out with the prosecutor.

The court rejected White's suggested equivalence of his abbreviated trial with a guilty plea and, on that basis, affirmed the denial of his 60-1507 motion. 222 Kan. at 713. The court pointed out that in his motion, White did not claim he misunderstood the stipulation or the legal effect it could have on the criminal charges against him. Nor did he contend he had been pressured or tricked into disposing of the charges that way. Without elaboration, the court observed that no statutory or case authority of which it was aware required a district court to "interrogate and advise a defendant, who is represented by counsel, before accepting and approving stipulations as to the evidence[.]" 222 Kan. at

21

713. The observation, however, simply posits a generalization that may be correct as far as it goes without considering exceptions or specific factual situations. The court did not tie that generalization to White's waiver of jury trial. White didn't challenge the jury trial waiver, and the court never discussed it. We are disinclined to extrapolate a precedential rule from *White* applicable to Brooks' claim premised on his right to jury trial. Another panel of this court, however, has relied on *White* in rejecting an argument like Brooks'. See *State v. Newman*, No. 104,872, 2011 WL 5526561, at *1-2 (Kan. App. 2011) (unpublished opinion), *rev. denied* 296 Kan. 1134 (2013).

Last year, in *State v. Rizo*, 304 Kan. 974, 377 P.3d 419 (2016), the court addressed a procedural scenario comparable to *White*. Rizo waived his right to a jury trial and later the same day had a bench trial on stipulated facts, resulting in his conviction for felony murder and several other serious crimes. As part of the arrangement, the State dismissed a separate felony case against Rizo that would have substantially increased his criminal history had it resulted in a conviction. Unlike White, who attacked his trial on stipulated facts, Rizo challenged the sufficiency of his jury trial waiver specifically because he was not informed whether the district court would hear evidence or simply receive a stipulation during the bench trial. When Rizo entered his plea, the parties had not yet determined how the bench trial would be conducted. The court held that the specifics of what would be presented to the district court were not integral to Rizo's knowing and voluntary waiver of his right to jury trial. 304 Kan. at 981.

As the lawyers assembled for the bench trial, they informed the district court they would be submitting a stipulation of facts. The district court explained to Rizo the differences between a bench trial on stipulated facts and one involving witnesses and physical evidence and then determined he had discussed the proceedings with his lawyer. The Kansas Supreme Court implicitly indicated Rizo voiced no objection to a bench trial on stipulated facts. The court cited *White* to recognize the district court did more than was

necessary in discussing the trial by stipulation with Rizo. 304 Kan. at 982-83. But the holding in *Rizo* does not dictate the outcome here.

Both *White* and *Rizo* dealt with defendants relinquishing their jury trial rights entirely and substituting bench trials on stipulated facts. Here, Brooks fashions a different sort of argument based on the removal of an issue from the jury's consideration by stipulation—a situation in which he had exercised his constitutional right to a jury trial only to have that right, in his view, materially compromised by his lawyer's agreement with the State to limit what the jury got to decide. Brooks contends that confluence of circumstances required the district court to inform him of and obtain his assent to that agreement. Neither *White* nor *Rizo* says otherwise. Nor do they set forth rationales that ineluctably expand to defeat Brooks' claim. By the same token, they certainly do nothing to advance his position.

*Requisite Intent to Distribute*

For his final point on appeal, Brooks contends the State failed to prove the statutory intent required for his conviction of possession with intent to distribute methamphetamine within 1,000 feet of a school. Brooks reads the statute as punishing a defendant who plans to traffic in a controlled substance near a school. That is, the intended sale or other distribution is to occur within 1,000 feet of the school. Brooks says there was no direct or circumstantial evidence he had that particular intent regarding the methamphetamine he kept in his hat.

The first step in analyzing this issue calls for an interpretation of the relevant statutory language to discern the required intent. That is a question of law. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). The legislature criminalized "distribut[ion] or possess[ion] with the intent to distribute" certain controlled substances, including methamphetamine. K.S.A. 2016 Supp. 21-5705(a)(1). And the legislature

23

imposed an enhanced punishment "if the controlled substance . . . was distributed or possessed with the intent to distribute on or within 1,000 feet of any school property." K.S.A. 2016 Supp. 21-5705(d)(5). The enhancement plainly applies if the defendant has actually distributed a controlled substance within 1,000 feet of a school. But does the proximity requirement apply to the "possession" component or the "intended distribution" component of the phrase "possessed with the intent to distribute"?

We suppose linguists and grammarians could parse the statute either way. But we are neither, so we don't know for sure. We do know that we surely are members of an intermediate appellate court and, as such, are bound to the decisions of the Kansas Supreme Court. *State v. Maestas*, 298 Kan. 765, 789-90, 316 P.3d 724 (2014). The court has already considered this precise statutory question and has answered it adversely to Brooks. *State v. Barnes*, 275 Kan. 364, 373, 64 P.3d 405 (2003). In *Barnes*, the court construed legally equivalent terminology in K.S.A. 65-4161(d), a predecessor of K.S.A. 2016 Supp. 21-5705(d)(5), as criminalizing "possession of the required quantity of drugs within 1,000 feet of a school and an intent to distribute the drugs somewhere[.]" *Barnes*, 275 Kan. at 373.[*]

[*]In K.S.A. 65-4161(d), the legislature mandated certain drug crimes be treated as severity level 2 offenses—increasing the presumptive guidelines punishment and operating as an enhancement similar to that in K.S.A. 2016 Supp. 21-5705(d)(5). The severity level 2 designation applied to defendants who "possessed [controlled substances] with intent to sell, deliver or distribute . . . in or on, or within 1,000 feet of any school property[.]" K.S.A. 65-4161(d). As we have indicated, the relevant language is functionally and legally indistinguishable from what's in K.S.A. 2016 Supp. 21-5705(d)(5). The *Barnes* court recognized the legislature imposed the increased penalty to promote "drug-free zones" around schools. 275 Kan. at 370. We have no reason to conclude the legislature had some different objective when it recodified K.S.A. 65-4161(d) and modified other aspects of the statute. So *Barnes* continues to provide a controlling interpretation of the statutory language Brooks challenges.

24

We need not puzzle over the meaning of K.S.A. 2016 Supp. 21-5705(d)(5). The *Barnes* decision removes any puzzlement and requires we rule against Brooks on this point.

Affirmed.

* * *

BUSER J., concurring: I concur with the holding of this opinion. I do not concur in the discussion regarding the stipulation. I would find that because Brooks' counsel jointly entered into the stipulation for strategic purposes any error was invited and, therefore, Brooks is foreclosed from challenging the error on appeal. See *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014); *State v. Hargrove*, 48 Kan. App. 2d 522, 531-32, 293 P.3d 787 (2013); *State v. Downey*, 27 Kan. App. 2d 350, 358, 2 P.3d 191 (2000).

25