IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,710

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY MICHAEL ANDERSON,
*Appellant*.

SYLLABUS BY THE COURT

1.

When a single offense is alleged that may be committed in more than one way, the court is presented with an alternative means case. When several acts are alleged, any of which could constitute the crime charged, the court is presented with a multiple acts case.

2.

To avoid error in a multiple acts case, the State must have informed the jury which act to rely upon or the district court must have instructed the jury to agree on the specific act the defendant committed for each charge.

3.

A defendant who appeals the admission of a certain witness' testimony about the defendant's other crimes or civil wrongs under K.S.A. 2017 Supp. 60-455 without challenging the same or similar testimony admitted through other witnesses, when the unchallenged testimony is as prejudicial as the contested testimony, is not entitled to reversal; any error arising out of the admission of the contested testimony is harmless.

1

4.

A prosecutor has wide latitude in crafting arguments and drawing reasonable inferences from the evidence, but the prosecutor's arguments must accurately reflect the evidence, must accurately state the law, and must not be intended to inflame the passions or prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law.

5.

Cumulative error, i.e., multiple errors considered collectively, may be so great as to require reversal of a defendant's conviction. The test for cumulative error is whether, under the totality of the circumstances, the multiple errors substantially prejudiced the defendant and denied him or her a fair trial.

Appeal from Bourbon District Court; MARK ALAN WARD, judge. Opinion filed October 5, 2018. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Rachel L. Pickering*, assistant solicitor general, argued the cause, and *Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: In this shaken-baby case, Anthony Michael Anderson directly appeals his jury convictions for child abuse and felony murder, claiming four errors: (1) the district court failed to give a unanimity instruction for the charge of child abuse; (2) the State committed prosecutorial error three times during closing argument by engaging in speculation not fairly based on the evidence presented; (3) the district court erroneously admitted testimony under K.S.A. 2017 Supp. 60-455 about Anderson's prior

aggressive behavior toward the child victim; and (4) cumulative error requires reversal. Finding that reversal is not required, we affirm.

FACTUAL AND PROCEDURAL OVERVIEW

At the time of the April 26, 2015 incident giving rise to the charges against Anderson, he was in a relationship with Kiera Lamb, who had a six-month-old son, A.O., by another man. Lamb and Anderson lived with his parents, who had another son, Christopher. All were at the house that day, until Lamb left around 2 p.m. to go to work. The parents and Christopher left shortly thereafter to go fishing, leaving Anderson and A.O. alone at the house.

Lamb related that when she left, A.O. was sitting in a bouncer seat; he looked happy and was not crying. Other than a belly button hernia, A.O. had been a healthy child and he was not sick or taking medication on the day of the incident. When Christopher left the house, he observed Anderson feeding A.O., who looked fine.

At 2:43 p.m., first responders were dispatched to the home of Grace Sheldon, a neighbor who lived across the street from Anderson's house. She had called 911 to report that an infant was having trouble breathing. Arriving first, a state trooper observed Anderson pacing around, holding a crying infant whose breathing sounded congested. Anderson told him that the baby had fallen off a couch while he was cleaning the house.

An EMT assessed that A.O. was barely breathing but presented no visible injuries. A.O. was life-flighted to Children's Mercy Hospital in Kansas City where emergency doctors discovered a large subdural hemorrhage on the right side of A.O.'s brain, a retinal

3

hemorrhage in A.O.'s right eye, and a small fracture in his ankle. A craniectomy could not save A.O.; he was later declared brain dead. Lamb authorized the withdrawal of life support, and A.O. was pronounced dead on April 28, 2015.

The pathologist who performed A.O.'s autopsy, Dr. Michael Handler, opined that the cause of death was "non-accidental head injury," and that the manner of death was homicide. He said that A.O.'s injuries were consistent with being shaken or thrown onto a soft surface. Anderson's version of events was that, after he fed A.O., he laid him on the couch to sleep and went to clean the bathroom. Anderson heard a thud and a squawk and returned to find A.O. on the floor, crying and gasping for breath. He picked up A.O., patted him on the back to help him breathe, and took him across the street to the neighbor's house for help.

The State charged Anderson with child abuse and felony murder. Before trial, Anderson filed a motion in limine to exclude any testimony of prior bad acts generally. The State filed a notice of intent to present evidence of other crimes or civil wrongs, proffering that Tesla Bodine, who had previously lived with Anderson and Lamb, would testify that she observed Anderson being rough with A.O. The district court ruled that Bodine's testimony would be admissible under K.S.A. 60-455 to prove identity, relationship, and absence of mistake or accident.

At trial, the State presented the testimony of Dr. Handler, as well as the testimony of the pediatric radiologist who reviewed A.O.'s x-rays and another doctor who evaluated A.O. for signs of abuse. All three doctors opined that A.O. could not have sustained his injuries in a fall from the couch. The defense presented the testimony of a forensic pathologist to offer a competing medical opinion on the cause of A.O.'s injuries.

The jury found Anderson guilty on both counts. The district court denied Anderson's motion for a new trial based on the admission of K.S.A. 60-455 evidence. The court sentenced Anderson to life imprisonment for felony murder and 34 months' imprisonment for child abuse, to run consecutive. The court also imposed lifetime parole. Anderson appealed directly to this court. See K.S.A. 2017 Supp. 22-3601(b)(3).

REFUSAL TO GIVE A REQUESTED UNANIMITY INSTRUCTION

Before closing arguments, the district court held a jury instruction conference, at which the parties agreed that the child abuse instruction would say that the State was required to prove that Anderson "knowingly tortured or cruelly beat or shook [A.O.]" on April 26, 2015. Then the defense counsel requested a "68.10" multiple acts instruction, apparently referring to PIK Crim. 4th 68.100 (2016 Supp.), which states: "The State claims distinct multiple acts which each could separately constitute the crime of insert crime. In order for the defendant to be found guilty of insert crime, you must unanimously agree upon the same underlying act." The "Notes on Use" for that patterned instruction recite that "[t]his instruction is for use when distinct incidents separated by time or space are alleged by the State in a single count of the charging document."

But defense counsel's argument to the district court was that the "multiple acts" instruction was necessary to ensure that the jury unanimously decided whether Anderson tortured A.O., or beat A.O., or shook A.O. The State countered that a multiple acts instruction did not apply because the theory it would present to the jury was that Anderson injured A.O. by throwing him down on the couch or shaking him, as part of one single incident. Ultimately, the district court denied the instruction based on *State v. De La Torre*, 300 Kan. 591, 331 P.3d 815 (2014).

At the trial level there appears to have been some confusion about or conflation of the concepts of multiple acts and alternative means. On appeal, Anderson's brief clearly

states that this is a multiple acts case, which required the district court to give the requested unanimity instruction.

*Standard of Review*

"Unanimity instruction errors are reviewed under a three-part framework. First, the reviewing court determines whether a multiple acts case is presented. The threshold question is whether jurors heard evidence of multiple acts, each of which could have supported conviction on a charged crime. This is a question of law subject to unlimited review. If the case is a multiple acts case, the next question is whether error was committed. To avoid error, the State must have informed the jury which act to rely upon or the district court must have instructed the jury to agree on the specific act for each charge. Failure to elect or instruct is error. Finally, the court determines whether the error was reversible or harmless. [Citations omitted.]" *De La Torre*, 300 Kan. at 596.

*Analysis*

Anderson's argument on appeal is founded on the premise that the State's evidence is entirely circumstantial and its medical "experts testified that A.O.'s injuries could have occurred either by shaking or by throwing him onto a soft surface." Specifically, Anderson argues that because either act—shaking or throwing down—could independently support a conviction for child abuse, and derivatively for felony murder, the State presented multiple acts that required the jury to be unanimous about which act occurred.

What Anderson describes in his brief is not a multiple acts case. We have attempted to distinguish between multiple acts and alternative means by explaining: "When a single offense is alleged that may be committed in more than one way, the court is presented with an alternative means case. When several acts are alleged, any of which could constitute the crime charged, the court is presented with a multiple acts case.

6

[Citations omitted.]" *State v. Bailey*, 292 Kan. 449, 458, 255 P.3d 19 (2011). In other words, in an alternative means case, only one crime was committed and only one conviction is possible, although the State says that the one crime may have been committed in one or more different ways. For instance, here, only one felony murder conviction was possible because only one death occurred, no matter how many underlying felonies might have supported the prosecution. See *State v. Littlejohn*, 298 Kan. 632, 649, 316 P.3d 136 (2014) (regardless of number of potentially fatal acts, victim can be killed only once; defendant could only be charged and convicted of one count of felony murder; and unanimity instruction not legally appropriate). On the other hand, in a multiple acts case, multiple crimes were committed for which the State could have obtained multiple convictions, but the State chose to only charge one count of the crime.

Here, the State did not allege that on April 26, 2015, Anderson *both* slammed down A.O. onto a soft surface *and* shook him. Rather, the State's theory, as supported by its medical experts, was that A.O. was abused by *either* being slammed down on a soft surface *or* being shaken. Nevertheless, even if Anderson had done both acts—shaken A.O. and threw him down—multiple acts in the legal sense cannot be part and parcel of the same incident. We have explained the spatial and temporal requirements as follows:

> "[A] court must decide whether the defendant's conduct is part of one act or multiple acts that are separate and distinct from each other. 'Multiple acts' are legally and factually separate incidents that independently satisfy the elements of the charged offense. Incidents are factually separate when independent criminal acts have occurred at different times or different locations or when a criminal act is motivated by a fresh impulse. [Citations omitted.]" *De La Torre*, 300 Kan. at 598.

7

The parties do not dispute that A.O. was injured in an incident that occurred at one location in a short time period. They only dispute how the injury occurred—by accident or by child abuse. Nothing in the record would support the notion that Anderson committed two counts of child abuse, rather than one. Consequently, the jury did not have to choose between multiple acts, rendering a unanimity instruction inapplicable. Cf. *Bailey*, 292 Kan. at 458 (unanimity not required as to means by which crime committed).

Anderson also points to Bodine's testimony regarding a prior incident in which Anderson threw down A.O. as exacerbating the multiple acts concerns. The unanimity requirement with respect to multiple acts can be met in two ways: "To avoid error, the State must have informed the jury which act to rely upon or the district court must have instructed the jury to agree on the specific act for each charge." *De La Torre*, 300 Kan. at 596. The State left no question with the jury that it was relying on the April 26, 2015 incident to support the charges.

In short, the district court did not err in declining to give the jury a unanimity instruction.

ADMISSION OF K.S.A. 60-455 EVIDENCE

Anderson argues the district court erroneously admitted Bodine's testimony about Anderson's aggression toward A.O. under K.S.A. 2017 Supp. 60-455 because the reasons the court cited—identity, relationship of the parties, and absence of mistake or accident— were not in dispute. The State counters that Bodine's testimony does not fall under the purview of K.S.A. 60-455 because she did not describe a crime or civil wrong. Alternatively, the State claims that the court's rationale was correct, and that any error was harmless because Anderson was the only person with A.O. when the injuries occurred and the medical evidence overwhelmingly pointed to abuse.

8

*Standard of Review*

When reviewing the admission of evidence under K.S.A. 2017 Supp. 60-455(b):

"First, the trial court must determine whether the fact to be proven is material under K.S.A. [2017] Supp. 60-455(b). That is whether it relates to one of the material facts identified in that provision—motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident—or some other material fact other than propensity to commit crime. To be material the fact must have some real bearing on the decision in the case. An appellate court reviews this determination independently, without any required deference to the trial court.

"Second, the trial court must determine whether the material fact is disputed. If so, the trial court must also determine whether the evidence is probative of the disputed material fact, that is, whether it has any tendency in reason to prove the fact. An appellate court reviews this determination for an abuse of discretion.

"Third, the trial court must determine whether the probative value of the evidence outweighs the potential for producing undue prejudice to the defendant. An appellate court's standard for reviewing this determination is also abuse of discretion. [Citations omitted.]" *State v. Barber*, 302 Kan. 367, 374-75, 353 P.3d 1108 (2013).

*Analysis*

Early in the trial, Detective Brian Eastwood testified about his interview with Bodine. As soon as Detective Eastwood began the topic, defense counsel objected on hearsay grounds. The court overruled the objection. Detective Eastwood then testified,

"[Bodine] indicated at one point in time that [Anderson] was angry and had anger tendencies. I'm sorry, trouble controlling his anger and at one point in time with [*sic*] [A.O.] was crying a lot and she indicated that she had witnessed him pick [A.O.] up, hold him eye level with him, and tell him to shut up, shook him, and then threw him back

9

down on the couch or on the bed, I'm sorry. And when I conducted the interview with Ms. Bodine, I provided her with a, what we call a 'CPR mannequin.' It looks like a small child. During my interview I had her reenact what she meant. By doing so, she did exactly that, held it eye level said, 'Shut up,' and put it back down and said that's what she had witnessed on one occasion."

Notably, Anderson did not object on K.S.A. 2017 Supp. 60-455 grounds to this testimony. Defense counsel even asked Detective Eastwood on cross-examination if his report correctly stated that "'Bodine continued to say she witnessed Anderson pick up [A.O.] really fast and set him down really hard and tell him to shut up,'" and Detective Eastwood said that was correct.

Later at trial, but before Bodine testified, the court and parties discussed a K.S.A. 60-455 limiting instruction for her testimony. The court asked defense counsel, "[O]ther than you objected to this to begin with, what's your objection?" Defense counsel replied, "Judge, I'll have a continued objection and then the issue of 'absence of mistake or accident.' I am concerned with [sic] because . . . I don't think that's an issue. So I'm going to continue my objections that I had at the pretrial conference at this point."

Subsequently, Bodine testified about her personal observations of Anderson's aggression toward A.O. She recalled that Anderson would lift A.O. up fast and stop suddenly; cause him to jerk; yell at him to shut up; set him down roughly; and drop him a little. She also described how Anderson became angry and frightened her. Anderson did not contemporaneously object to this testimony.

At the end of trial, defense counsel specifically asked the district court *not* to give a K.S.A. 60-455 limiting instruction, and the court reluctantly acquiesced. Defense counsel was concerned that the language of the instruction would suggest that Bodine observed Anderson commit a crime.

10

We discern that we can resolve this issue quickly by moving directly to the question of whether any error in admitting the testimony was harmless. The standard for harmlessness of this non-constitutional evidentiary issue is set forth in K.S.A. 2017 Supp. 60-261, which states:

"Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

Under the K.S.A. 2017 Supp. 60-261 harmlessness inquiry, this court determines "whether there is a reasonable probability that the error will or did affect the outcome of the trial in light of the entire record." *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013). The focus is on "undue or unfair prejudice." 296 Kan. at 895. The party benefitting from the error has the burden to demonstrate harmlessness. 296 Kan. at 895.

In *Barber*, the defendant was convicted of aggravated battery and child abuse for shaking his two-month-old daughter. Barber claimed he was home alone with his daughter when she had a seizure in her bouncy chair, and he called 911. The emergency room doctors discovered the baby had subdural and retinal hemorrhages. At trial, two witnesses testified that they had seen Barber shake the baby on prior occasions. On appeal, Barber claimed the trial court erroneously admitted a witness' testimony about his prior acts of shaking the baby under K.S.A. 60-455.

This court declined to reach the merits of Barber's K.S.A. 60-455 challenge because other unchallenged testimony inflicted the same or greater damage. 302 Kan. at 375. The court explained,

11

"Ordinarily, we would now turn to a thorough analysis of the merits of Barber's argument that the trial court should not have admitted Brown's testimony, guided by the authorities recited above. On the record before us, however, even if we assume that the admission was erroneous under K.S.A. 60-455, we could not reverse on that basis. Other testimony, not challenged by Barber on appeal, was bound to inflict the same or greater damage than that inflicted by Brown's testimony on the defense case." 302 Kan. at 375.

For example, an investigating officer testified at trial about the witness' challenged statement. And another witness testified that she warned the baby's mother about Barber's rough treatment of the child. The court concluded:

"A defendant who appeals admission of a certain witness' testimony about the defendant's other crimes or civil wrongs under K.S.A. 2010 Supp. 60-455 without challenging the same or similar testimony admitted through other witnesses that is as prejudicial or more prejudicial than the contested testimony is not entitled to reversal; any error arising out of admission of the contested testimony is harmless." 302 Kan. 367, Syl. ¶ 2.

Anderson is faced with the same dilemma. He did not challenge Detective Eastwood's testimony relating Bodine's description of Anderson's prior abuse, which was essentially identical to Bodine's trial testimony. There is no reasonable probability that the jury, having heard Detective Eastwood's testimony, would have reached a different verdict if Bodine had not personally testified. Accordingly, any error the district court may have made in allowing Bodine to testify about Anderson's prior treatment of A.O. was harmless.

PROSECUTORIAL ERROR IN CLOSING ARGUMENT

Anderson contends that the prosecutor made erroneous comments three times during closing argument. He complains that the prosecutor suggested that Anderson believed the State's doctors were out to get him for the fun of it; that the prosecutor said

Anderson testified that A.O. was his son; and that the prosecutor told the jury that Anderson lost his temper, resulting in a child with a massive brain injury. Although the prosecutor crossed the line of fair comment, the errors were harmless.

*Standard of Review*

*State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016), announced a new prosecutorial error rubric, divided in two steps: "error and prejudice." 305 Kan. at 109. This court recently summarized the *Sherman* test as follows:

> "To determine prosecutorial error, an appellate court decides whether the act complained of falls outside the wide latitude afforded to prosecutors to conduct the State's case in a way that does not offend the defendant's constitutional right to a fair trial. If it finds error, the appellate court determines if that error prejudiced the defendant's right to a fair trial."

> "In evaluating the prejudice step for reversible prosecutorial error, an appellate court applies the traditional constitutional harmlessness inquiry from *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Prosecutorial error during a trial is harmless if the State shows beyond a reasonable doubt the error did not affect the trial's outcome in light of the entire record, i.e., there is no reasonable possibility the error contributed to the verdict." *State v. Chandler*, 307 Kan. 657, Syl. ¶¶ 6-7, 414 P.3d 73 (2018).

See *Sherman*, 305 Kan. at 109.

13

*Analysis*

Generally speaking,

"A prosecutor has wide latitude in crafting arguments and drawing 'reasonable inferences from the evidence but may not comment on facts outside the evidence.' Any argument 'must accurately reflect the evidence, accurately state the law, and cannot be "intended to inflame the passions or prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law."' [Citations omitted.]" *State v. Longoria*, 301 Kan. 489, 524, 343 P.3d 1128 (2015).

*Doctors' motives*

The context of a challenged statement matters. See *State v. Thomas*, 307 Kan. 733, 744, 415 P.3d 430 (2018) ("Appellate courts consider the prosecutor's comments in the context in which they were made rather than in isolation."); *State v. Fisher*, 304 Kan. 242, 253, 373 P.3d 781 (2016). Before making the following comments, the challenged portion of which is italicized, the prosecutor summarized the State's doctors' opinions about A.O.'s injuries and then argued:

"*Anthony Anderson, he wants you to believe the doctors are just all wrong and somehow they're out to get him, that they just got this—for some reason, they picked him out to just say,* [']*Hey, we're going to get this guy and we're going to just say that he abused this kid for the fun of it. The evidence supports all of that.*[']

"These people had no motive to just try and pin this on someone. In fact, none of them said that was the guy that did it. They don't—they don't know who did it. They're leaving that to you[ ]all. All they know is that from what they saw, that kid was abused to death. That's what they know." (Emphasis added.)

14

To the extent the prosecutor intended to convey to the jury that the doctors who testified for the State had no motive to lie, we are presented with a close case. A prosecutor who speculates about witness motives walks a fine line between "explaining to juries what they should look for in assessing witness credibility," *State v. McReynolds*, 288 Kan. 318, 325, 202 P.3d 658 (2009), and "improperly bolstering the credibility of its witnesses" by "injecting [his or] her personal opinion regarding witnesses' motives," *State v. Sprague*, 303 Kan. 418, 429, 362 P.3d 828 (2015). Here, the prosecutor teetered on that fine line but kept from falling over to the wrong side by explaining that the doctors did not say who abused the child and that the doctors were leaving that decision to the jury. Cf. *State v. Stevenson*, 297 Kan. 49, 55, 298 P.3d 303 (2013) ("The prosecutor's comments in this case scuffed the line of misconduct without actually crossing it.").

On the other hand, to the extent the prosecutor was arguing that Anderson's defense was based on a conspiracy theory, the prosecutor dove over the line and head-first into the error pit. First, the prosecutor had no evidence upon which to contend that Anderson was arguing a conspiracy theory. Neither Anderson nor his trial attorney accused the State's doctors of harboring malicious motives or conspiring against Anderson.

At one point, the prosecutor asked Anderson if he believed the State's doctors were wrong. Anderson replied, "I would say . . . just how they're wording it and trying to make it a bigger thing than what it really is. . . . It's an accident." While a prosecutor is permitted to make reasonable inferences based on the evidence, the prosecutor's argument "must remain consistent with the evidence." *State v. Killings*, 301 Kan. 214, 228, 340 P.3d 1186 (2015). Anderson's response to State questioning in no way implied that the doctors were out to get him "for the fun of it." Rather, the prosecutor manufactured a nonexistent defense conspiracy theory and made statements that were intended to "inflame the passions or prejudices of the jury or distract the jury from its duty to make decisions based on the evidence and the controlling law." 301 Kan. at 228.

15

In sum, we find that the prosecutor's comments about the doctors' motives constitute error. We will defer the second step of determining prejudice until we consider all of the alleged instances of prosecutorial error.

*Defendant calling the victim his son*

Next, Anderson complains that the prosecutor argued that Anderson was trying to manipulate the jury's emotions by calling the victim his son. Again, context is important, and we set out the entire argument, with the challenged statement in italics:

"Who was the only person who had access to [A.O.] in the 23-minute period? Only Anthony Anderson. That's it.

"*And then he came in here—you noticed how he highlighted the fact that it was his son? Because he wants you to be emotional and he wants you to feel bad for him. He wants you to think he's got this deep connection.* How long has he known [A.O.] before he died? At most, three months, at most. And remember the relationship they had? He's picking him up, shaking him and yelling at him to shut up and he's crying. But hey, he wants you to think he loved him as a father. He wants you to think with your emotions. I'm asking you not to do that. Don't think with your emotions. Look at the science and the medical testimony in this case."

The State claims this statement is a reasonable inference based on the evidence. See, e.g., *Barber*, 302 Kan. 367, Syl. ¶ 5 ("A prosecutor has wide latitude to craft arguments that include reasonable inferences to be drawn from the evidence."). The State points to the facts that Anderson was not A.O.'s biological father and that Anderson had lived with A.O. for only a few months. Therefore, the State contends that the reasonable inference to be drawn is that Anderson's referring to A.O. as his son was obviously a ploy to evoke sympathy from the jury.

16

On the other hand, the State ignores that Lamb testified that Anderson was A.O.'s primary caregiver and was with A.O. throughout every day, which could lead to a reasonable inference that a parent-like bond had been established. But we perceive that we need not decide whether the prosecutor's statement was a fair inference or was too attenuated to be reasonable. The inference, whether reasonable or not, asked the jury to go outside the evidence to consider the fact that the defendant was an unlikeable manipulator. See *State v. Baker,* 281 Kan. 997, 1016, 135 P.3d 1098 (2006) ("Prosecutors are not allowed to make statements that inflame the passions or prejudices of the jury or distract the jury from its duty to make decisions based on the evidence and the controlling law.").

In *Barber*, another shaken baby case, we considered a similar prosecutorial error challenge. There, the prosecutor argued that the defendant wanted the jury to believe that the defendant was the victim. Specifically, the pertinent part of the argument was: "'*Have you not sort of gotten the impression that he thinks he's the victim here; that he's wrapped into his own victimhood*?'" *Barber*, 302 Kan. at 379. We held the comments erroneous, explaining:

> "Here, it appears the prosecutor urged the jury to see Barber (who did not testify) as the type of person who believed that the world was against him and that he was always the victim and never responsible for his misfortune. The prosecutor did mention some evidence that could support that inference, *i.e.,* Barber suggested that others were responsible for Autumn's injuries and that he quit his job because he refused to shovel manure. The link, however, between the limited evidence presented at trial and the inference the prosecutor argued was too tenuous to be reasonable. But more importantly, the inference itself bore no relationship to the factors the jury needed to decide.
>
> "A prosecutor may not make statements intended to inflame the jury's passions or prejudices or attempt to distract the jury from its duty to rely on the evidence to decide the case. *State v. Adams,* 292 Kan. 60, 67, 253 P.3d 5 (2011). Whether Barber pitied himself and his circumstances did not make it more or less likely that he intentionally

17

shook Autumn on February 7, 2008, and caused her injuries. See *State v. Holt,* 300 Kan. 985, 992, 336 P.3d 312 (2014) (emphasizing facts not relevant to proving the charged crime can be misconduct). The statements worked only to inflame the jury's prejudices and provoke it to dislike Barber personally, thereby distracting it from its duty to decide Barber's guilt based on the evidence in the case. The Court of Appeals correctly recognized that these statements amounted to misconduct." *Barber*, 302 Kan. at 379-80.

The wide latitude with which prosecutors are imbued would certainly permit the admonition to the jurors not to "think with [their] emotions," and the encouragement to "[l]ook at the science and the medical testimony in this case." Where the prosecutor went off the rails was in arguing that the jury should attribute a bad motive to the defendant referencing the victim as his son, when defendant's motive for that statement "bore no relationship to the factors the jury needed to decide" and served only to provoke the jury to dislike Anderson personally. 302 Kan. at 379. That aspect of the closing argument was error.

*Defendant loses his temper*

Finally, Anderson claims the prosecutor argued facts not in evidence by telling the jury that Anderson lost his temper on April 26 because he was angry to be at home with the baby while his family was at the lake. The prosecutor explained that Anderson and A.O. were alone, and the medical evidence showed A.O. was killed by being shaken or thrown into a soft surface. Then he commented,

"[Anderson] was working on his car that day, couldn't get it fixed. It's common knowledge working on cars that you can't fix, people often get frustrated with that. And not only that, then his girlfriend goes off to work. And then his family are all out to the

18

lake fishing having fun. He's playing nanny at home. He can't get his work done on the car because the baby's inside crying because he's hungry, and he gets frustrated, loses his temperature—or temper, excuse me, and now we have a kid who's—with a massive brain injury and a broken leg."

Anderson accurately points out that "the record contains no evidence that [he] lost his temper or otherwise expressed frustration at his girlfriend or his family on April 26, 2015." Indeed, the State even asked Anderson on cross-examination if he was upset that day because his family went to the lake and his girlfriend went to work, and he said "no." The prosecutor not only argued facts not in evidence, he argued facts that were contrary to the evidence. "It is improper for a prosecutor to create an 'imaginary script' in order to create and arouse the prejudice and passion of the sentencing jury." *State v. Kleypas*, 272 Kan. 894, Syl. ¶ 83, 40 P.3d 139 (2001). Again, the prosecutor committed error.

### *Prejudice*

Having determined that the prosecutor exceeded the wide latitude afforded to prosecutors on three occasions, we turn to the second step of determining prejudice. To determine reversibility, we apply the *Chapman* harmlessness test:  whether the State has proven beyond a reasonable doubt that "the error did not affect the trial's outcome in light of the entire record, i.e., there is no reasonable possibility the error contributed to the verdict." *Chandler*, 307 Kan. 657, Syl. ¶ 7; see *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

Anderson simply argues that he suffered prejudice because the case against him was "entirely circumstantial." That argument is not compelling. As we have often declared:  "'A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom.'" *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014) (quoting *State v. McCaslin*, 291

Kan. 697, 710, 245 P.3d 1030 [2011]). But more importantly, our touchstone is not the strength of the State's case. "Prejudice can exist even in a strong case." *Chandler*, 307 Kan. at 679; see *Sherman*, 305 Kan. at 111 ("The focus of the inquiry is on the impact of the error on the verdict. While the strength of the evidence against the defendant may secondarily impact this analysis one way or the other, it must not become the primary focus of the inquiry.").

We discern that the prosecutor's errors in this case were not game-changers. The flippant argument—that the defendant believes the doctors were out to get him for the fun of it—was so crass and outrageous that it may well have been more prejudicial to the State. With respect to the second error, the prosecutor could have simply told the jury that A.O. was not Anderson's biological son and had only lived with Anderson for a few months, letting the jury draw its own inferences. It is likely that most jurors would have perceived that the prosecutor was skeptical of Anderson labeling A.O. as his son, without the explicit statements in closing argument.

Similarly, one would hope that most jurors would expect that a person who shakes or throws down a baby is angry and frustrated. The prosecutor did not need to manufacture an imaginary script; he could have simply pointed to Bodine's testimony that Anderson had been angry and frustrated with the child in the past.

This case presented a battle of experts that, in turn, impacted Anderson's credibility about what caused A.O.'s injuries. We see no reasonable possibility that the absence of the prosecutor's erroneous comments would have changed the outcome of the credibility and expert battles that Anderson lost. We decline to reverse on this issue.

For his final issue, Anderson asserts that the cumulative effect of all of the claimed errors deprived him of a fair trial.

*Standard of Review*

"This court utilizes a de novo standard when determining whether the totality of circumstances substantially prejudiced a defendant and denied the defendant a fair trial based on cumulative error." *State v. Brown*, 298 Kan. 1040, 1056, 318 P.3d 1005 (2014).

*Analysis*

We have not agreed with Anderson on all of his claims of error. Obviously, then, we will only consider the cumulative effect of the errors we have found to exist. We apply the following test:

> "'Cumulative error, considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of the circumstances substantially prejudiced the defendant and denied him or her a fair trial. No prejudicial error may be found under the cumulative error doctrine if the evidence against the defendant is overwhelming.'" *State v. Carter*, 305 Kan. 139, 166, 380 P.3d 189 (2016).

As just discussed, we found three instances of prosecutorial error and determined that they did not require reversal. A cumulative error analysis of those three prosecutorial errors would not yield a different result; they did not deny Anderson a fair trial.

But we also resolved the challenge to Bodine's testimony about prior abuse by proceeding directly to a harmless error analysis. Giving Anderson the benefit of the doubt as to whether Bodine's testimony was erroneously admitted, we assume error for the purpose of this cumulative error analysis. Nevertheless, eliminating Bodine's testimony could not have possibly changed the trial's outcome. Essentially the same information was conveyed to the jury through Detective Eastwood's testimony, which was received without a defense objection based on K.S.A. 2017 Supp. 60-455. Accordingly, Anderson's cumulative error claim fails.

Affirmed.