NOT DESIGNATED FOR PUBLICATION

No. 120,101

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENNETH E. DERUSSEAU,
*Appellant*.

MEMORANDUM OPINION

Appeal from Cloud District Court; KIM W. CUDNEY, judge. Opinion filed November 8, 2019.
Affirmed.

*William R. Thompson*, of Condray & Thompson, LLC, of Concordia, for appellant.

*Robert A. Walsh*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., STANDRIDGE and WARNER, JJ.

PER CURIAM: Kenneth Eugene Derusseau appeals his conviction of leaving the scene of an injury accident. Derusseau argues that his conviction should be overturned because (1) both the leaving the scene of an accident statute, K.S.A. 2018 Supp. 8-1602, and the driver's duty to report information statute, K.S.A. 2018 Supp. 8-1604, are unconstitutionally vague; (2) count II of the complaint charging him with leaving the scene of an accident was deficient because it failed to charge a Kansas crime and because it failed to provide fair notice of the crime alleged; (3) the prosecutor committed prosecutorial error during closing argument; and (4) there was insufficient evidence to

1

support his conviction. We find that Derusseau is not entitled to relief on any of his claims, so we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On October 20, 2017, around 7:55 p.m., Cloud County Sheriff Deputy Douglas Colby was dispatched to a traffic accident just east of Clyde, Kansas, on Highway 9. At the accident scene, Colby observed a blue Chevy Cruz with front-end damage and a red antique tractor that was split in half. EMTs were already loading Yvonne Linder, who had been riding on the tractor, onto a gurney. Colby noticed that there was oil and gas and other fluids, including four Keystone Light beer cans, leaking on the highway. He also found a brown hat, a pair of shoes, and a handbag on the ground.

After talking to those at the scene, Colby determined that Derusseau was the driver of the tractor and that he was no longer at the scene. Colby and other deputies looked for Derusseau, but they did not find him until around 7 p.m. the next day. At that time, Colby asked Derusseau if he had been driving the tractor the night before and Derusseau told him that he was the driver, but he could not remember the accident. Derusseau told Colby he left to get help in Clyde after the accident, but he became confused on the directions and ended up walking the opposite way. Derusseau said that he eventually rested in a ditch when his back and ankles gave out and that he made it back into town around 7 a.m. Colby asked Derusseau if he had been drinking the night of the accident and Derusseau said no. Colby then issued Derusseau a citation for leaving the scene of an accident. A few days later, Derusseau admitted to Colby in a phone conversation that he had a couple of beers the morning of the accident.

On November 15, 2017, the district court held a first appearance on the traffic citation. At the hearing, the State moved to amend the statutory citation of the violation to "K.S.A. 8.1602.b.2, Failure to Report an Injury and Property Damage Accident

exceeding $1,000.00, a Class A Misdemeanor." The district court granted the State's motion to amend. On November 28, 2017, the State filed an amended complaint charging Derusseau with one count of driving under the influence (DUI) and one count of leaving the scene of an injury accident. Derusseau did not argue that the complaint was deficient at that time and he did not file a motion for a bill of particulars.

The district court held a jury trial on March 27, 2018. The State first called Solomon Weber, the driver of the Chevy Cruz. Weber testified that he was coming around a curve on Highway 9, about three miles from Clyde, when he hit something. Weber stated it was dark and he saw nothing before the impact, but he heard a "terrible scream," slammed on his brakes, and the impact caused his air bags to deploy. Weber stated that he stopped on the shoulder about 100 yards from the crash and after a minute or two got out of his car. He stated that his cell phone rarely works in that area, but he tried calling his wife anyway, got through to her, and instructed her to call 911.

Next, the State called Monte Wunderle, who saw the accident because he was driving behind Weber when Weber struck the tractor. Wunderle testified that he saw a light in the middle of the highway but he could not tell what it was; then the car in front of him struck a tractor and two people "went flying in the air." Wunderle testified that he pulled his car over in the ditch, called 911, and flagged down the car that was coming up behind him. He testified that the woman in the car behind him was a nurse and she went to check on the victims. Wunderle testified that he saw a woman lying on the ground and that he checked on her. Wunderle testified that the other person from the tractor was on the highway after the accident but he got up and came over to the woman, asked her if she was all right, and then "just disappeared." Wunderle stated that he believed that the man was conscious of what was going on because he asked the woman if she was okay.

Linder's mother, Olive Valecka (Olive), testified that she has known Derusseau for years because he is friends with her kids. Olive stated that Linder called her earlier in the

3

evening to say that she and Derusseau ran out of gas, so Olive and her son, Todd Valecka (Todd), picked them up and took them to get gas in Clyde. Olive stated that when they got back to the tractor it would not start, and Derusseau tried to put on a spark plug wire, but he could not do it because he was intoxicated, so Todd did it. Olive testified that Derusseau was holding a beer at the time and that there were some beer cans sitting on the tractor in a beer box. Olive stated that once the tractor started, she and Todd left.

Olive testified that later in the evening, her grandson called and told her about the accident. Olive testified that she went to the hospital and saw Linder, who had injuries to her feet and hip. Olive stated she took Linder home later that night. When they got home, she thought someone had been in her house because she found some tracks that looked like grease spots going from one room to another and found a pair of socks on the kitchen table that were not hers. Olive testified that Linder told her the socks were Derusseau's.

Todd testified that earlier in the day he and his mother went to pick up Derusseau and Linder and took them to Clyde to get gas. Todd testified that when they got back to the tractor, he put the gas in because Derusseau could barely stand up and he also had to put on a wire because Derusseau was unable to do it. Todd testified that he saw Derusseau holding a beer near the tractor while he was fixing it and that he believed Derusseau was intoxicated that night.

Linder testified that she was with Derusseau on October 20, 2017, and she first saw him around 4 p.m. and that he was drinking beer at the time. Linder stated that Derusseau drank continuously that night and even bought a 30-pack of Keystone Light beer. Linder testified that they decided to ride the tractor to Clifton, but there was only one seat, so she sat on the side of the steering column. Linder stated that while Derusseau was driving, she had to keep "pushing the steering wheel" to keep the tractor from veering into the other lane. Linder testified that they ran out of gas, so they called her

4

mother, and her mother and brother took them to get gas. Linder stated that Todd put the gas in the tractor because Derusseau was not acting right and was stumbling.

Linder then testified that she did not remember the accident but remembered rolling and then seeing Derusseau in the highway. She testified that Derusseau was drinking while he was driving. Linder stated that she received a concussion and a scrape on her leg and hip from the accident. Linder testified that she remembered her mother finding the dirty socks in the house and that she knew they were Derusseau's socks because she had done his laundry before.

Colby then testified to his arrival on the scene and his investigation. Colby testified that he had deputies search Olive's home that night when they were looking for Derusseau because her house was only a mile and a half east of the accident and people at the scene said Derusseau had gone east. Colby stated that he at first did not cite Derusseau for DUI because he did not have a breath test or a blood draw, but he decided after his investigation that Derusseau should be charged with DUI.

Derusseau testified on his own behalf. Derusseau's theory of defense was that he was not intoxicated and that he left the scene of the accident to get help but then got confused because of his injuries. Derusseau stated that he had a couple of beers the morning of the accident and that he had cans of beer with him when he was going down the road. He testified that he remembered getting hit from behind and then getting up and wondering where Linder was. Derusseau testified that he remembered telling Wunderle that he was going to see if he could get some help.

Derusseau testified that he did not know what he was doing or where he was when he stood up and wandered from the accident. He testified that his head was pounding and that his ankles and back were hurt and that he could only walk a little way and then he had to rest. On cross-examination, Derusseau conceded that he left the scene, did not

walk towards Clyde, never came back to the scene, and never called law enforcement. After hearing all the evidence, the jury found Derusseau guilty of leaving the scene of an accident but found him not guilty of DUI.

On April 5, 2018, Derusseau filed a motion to arrest judgment. On May 1, 2018, the district court heard argument on the motion. Derusseau argued that count II of the complaint charging him with leaving the scene of an accident failed to charge a Kansas crime and failed to give proper notice of a crime. He argued that there was no required mental state pled in the complaint and it did not designate which requirements he failed to meet under K.S.A. 8-1604. The State responded that the complaint was sufficient because it used the statute's wording, which did not explicitly state a mental culpability.

On June 1, 2018, the district court denied the motion to arrest judgment. The district court found the complaint insufficient but determined that the deficiency did not affect Derusseau's substantial rights because he knew the requirements for conviction and presented a rigorous defense. The district court also noted that the jury instructions correctly described the elements for the offense of leaving the scene of an accident, including the required mental culpability. The district court then sentenced Derusseau to serve one year in Cloud County Jail but counted the 34 days' time served and placed Derusseau on probation for 12 months. Derusseau timely appealed his conviction.

ARE K.S.A. 2018 SUPP. 8-1602 AND K.S.A. 2018 SUPP. 8-1604
UNCONSTITUTIONALLY VAGUE?

Derusseau claims that both the leaving the scene of an accident statute, K.S.A. 2018 Supp. 8-1602, and the driver's duty to report information statute, K.S.A. 2018 Supp. 8-1604, are unconstitutionally vague. Derusseau argues that K.S.A. 2018 Supp. 8-1602 presents separate situations for injury accidents, noninjury accidents, and accidents causing damage over $1,000 and thus the statute is vague about whether a violation exists

6

when a citizen fails on only one of the three requirements. He argues that K.S.A. 2018 Supp. 8-1602 requires extensive legal analysis before the common driver can understand what is required by law. He also argues that K.S.A. 2018 Supp. 8-1604 is vague because it creates an "impossible situation" for drivers involved in an injury accident by requiring them to give immediate attention to injured persons—which could require a driver to transport an injured person to the hospital—and also requiring the person to wait at the scene for law enforcement to arrive.

In determining whether a statute is unconstitutionally vague, the court will ask "'(1) whether the statute gives fair warning to those potentially subject to it, and (2) whether it adequately guards against arbitrary and unreasonable enforcement.'" *State v. Williams*, 308 Kan. 1439, 1460, 430 P.3d 448 (2018) (quoting *State v. Bollinger*, 302 Kan. 309, 318, 352 P.3d 1003 [2015]). A statute fails to give adequate warning if it fails to provide a person of ordinary intelligence with fair notice. *Williams*, 308 Kan. at 1460. Determining whether a statute is constitutional is a question of law subject to unlimited review. *State v. Gonzalez*, 307 Kan. 575, 579, 412 P.3d 968 (2018).

K.S.A. 2018 Supp. 8-1602 states, in relevant part:

"(a) The driver of any vehicle involved in an accident resulting in injury to, great bodily harm to or death of any person or damage to any attended vehicle or property shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible, but shall then immediately return to and in every event shall remain at the scene of the accident until the driver has fulfilled the requirements of K.S.A. 8-1604, and amendments thereto.

"(b) A person who violates subsection (a) when an accident results in:

(1) Total property damages of less than $1,000 shall be guilty of a misdemeanor and, upon conviction, shall be punished as provided in K.S.A. 8-2116, and amendments thereto.

(2) Injury to any person or total property damages in excess of $1,000 or more shall be guilty of a class A person misdemeanor.

7

(3) Great bodily harm to any person shall be guilty of a severity level 8, person felony.

(4) The death of any person shall be guilty of a severity level 6, person felony, except as provided in subsection [(b)(5)].

(5) The death of any person, if the person knew or reasonably should have known that such accident resulted in injury or death, shall be a level 5, person felony."

K.S.A. 2018 Supp. 8-1604 states, in relevant part:

"(a)(1) The driver of any vehicle involved in an accident resulting in injury to or death of any person, or damage to any attended vehicle or property, shall give such driver's name, address and the registration number of the vehicle such driver is driving, and upon request shall exhibit such driver's license or permit to drive, the name of the company with which there is in effect a policy of motor vehicle liability insurance covering the vehicle involved in the accident and the policy number of such policy to any person injured in such accident or to the driver or occupant of or person attending any vehicle or other property damaged in such accident, and shall give such information and upon request exhibit such license or permit and the name of the insurer and policy number to any police officer at the scene of the accident or who is investigating the accident.

"(2) Such driver, insofar as possible, shall immediately make efforts to determine whether any person involved in such accident was injured or killed, and shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary, or if such carrying is requested by the injured person."

By the plain language of K.S.A. 2018 Supp. 8-1602(a), if a driver of a vehicle is involved in an accident that results in injury, death, or damage to any attended vehicle or property, then the driver must stop his vehicle, return to the scene if necessary, and "in every event" remain there until fulfilling the requirements of K.S.A. 2018 Supp. 8-1604. K.S.A. 2018 Supp. 8-1604 then details the information that a driver must give, and to whom, before the driver can lawfully leave the scene.

8

Contrary to Derusseau's argument, the statutes do not present three different situations by discussing injury, noninjury, and property damage accidents. Instead, K.S.A. 2018 Supp. 8-1602 presents varying degrees of crime severity based on the type of harm caused by the accident. A person of ordinary intelligence is provided with fair notice that whether it is an injury, noninjury, or attended property damage accident, a driver must remain on the scene until the driver reports certain information. K.S.A. 2018 Supp. 8-1604 details the information the driver must give to law enforcement before the driver can lawfully leave the scene.

The plain language of the statutes covers Derusseau's "impossible situation" requiring a driver to transport an injured person to the hospital but at the same time wait at the scene for law enforcement to arrive. K.S.A. 2018 Supp. 8-1604(b)(2) states that when no officer is present, the driver "shall immediately report such accident, by the quickest available means of communication, to the nearest office of a duly authorized police authority if . . . any person involved in the accident is injured." Thus, in Derusseau's hypothetical situation, the driver could transport the injured person to the hospital and still report the accident by phone to police without violating the statute. After transporting the injured person, the driver could also return to the scene and report the information as required by K.S.A. 2018 Supp. 8-1604.

In sum, the provisions of K.S.A. 2018 Supp. 8-1602 and K.S.A. 2018 Supp. 8-1604 give fair warning to those potentially subject to the statutes and adequately guards against arbitrary and unreasonable enforcement. See *Williams*, 308 Kan. at 1460. We reject Derusseau's claim that the statutes are unconstitutionally vague.

WAS COUNT II OF THE COMPLAINT DEFICIENT?

Derusseau also claims that count II of the complaint charging him with leaving the scene of an accident was deficient because it failed to charge a Kansas crime and because

9

it failed to provide fair notice of the alleged crime. The State asserts that the charging document sufficiently informed Derusseau of the charge so that he could prepare his defense and he was not otherwise prejudiced. "The standard of review governing challenges to charging documents in Kansas criminal cases is de novo." *State v. Dunn*, 304 Kan. 773, Syl. ¶ 6, 375 P.3d 332 (2016).

In *Dunn*, the Kansas Supreme Court overruled prior Kansas caselaw and declared: "Charging documents do not bestow or confer subject matter jurisdiction on state courts to adjudicate criminal cases, the Kansas Constitution does." 304 Kan. at 811. A defendant can raise three types of charging document insufficiencies: (1) failure to show the case is in the correct court and territory; (2) failure to charge a Kansas crime; and (3) failure to meet federal and state constitutional standards of due process and notice. *Dunn*, 304 Kan. at 815. Derusseau argues two of these insufficiencies: failure to charge a crime and failure to provide fair notice.

Here, count II of the amended complaint states: "That on or about the 20th day of October, 2017, in the County of Cloud, State of Kansas, Defendant unlawfully left the scene of a non-injury accident, in violation of K.S.A. 08.1602.a.b2, Leaving the Scene of an Injury Accident, a Class A Misdemeanor." Derusseau argues that count II of the complaint failed to charge a crime and failed to provide fair notice because it (1) did not mention the required intent; (2) called the accident both an injury and noninjury accident; (3) failed to allege the connection between K.S.A. 2018 Supp. 8-1602 and K.S.A. 2018 Supp. 8-1604; and (4) improperly designated "K.S.A. 8-1602.a.b2" as the statute violated.

Derusseau first contends that the complaint is deficient because the statutory citation, "K.S.A. 08.1602.a.b2," is an error that causes confusion because (b)(2) does not impose a duty that he could have violated. It is true that the complaint did not properly cite the statute and it could have better set out that it was alleging a violation of K.S.A. 2018 Supp. 8-1602(a) *and* (b)(2). But while a complaint must have the "official or

customary citation of the statute . . . [e]rror in the citation . . . shall be not ground for dismissal of the complaint . . . or for reversal of a conviction if the error or omission did not prejudice the defendant." K.S.A. 22-3201(b). Here, the improper citation did not prejudice Derusseau and cannot support his argument that his conviction should be reversed based on this deficiency.

We agree with Derusseau that count II of the complaint does not sufficiently allege facts that if proved beyond a reasonable doubt would establish a violation of a Kansas crime. Count II contains almost no factual allegations of Derusseau's intention and actions aside from the date and location of the offense. Count II does not allege facts that would establish Derusseau was a driver of a vehicle involved in an accident and it does not identify what type of accident he was involved in under (b)(2), i.e., injury to a person or damage to property in excess of $1,000. Nor does the complaint plead any required mental culpability. Thus, the State failed to charge Derusseau with the Kansas crime of leaving the scene of an accident.

That said, since failure to charge a crime is a statutory error, the court uses a statutory harmless error inquiry to determine whether the error affected the defendant's substantial rights. *Dunn*, 304 Kan. at 817. In *Dunn*, the Kansas Supreme Court determined that a factually deficient charging document did not affect the defendant's substantial rights because the defendant and his counsel understood what the State sought to prove. 304 Kan. at 821. Derusseau's substantial rights were not affected by the complaint's failure to include factual allegations for the same reason. Derusseau's defense theory was that he did not leave the scene with the required mental culpability because he left to get help but was injured and confused. While the complaint did not plead a required mental culpability, Derusseau understood that it was a required element that the State had to prove, as shown by his defense.

11

As for the other missing allegations, Derusseau did not dispute that he was the driver of the tractor or that he was involved in an accident. Derusseau also conceded that he left the scene, did not return, and did not talk to law enforcement. Similarly, Derusseau's argument that the complaint failed to charge a crime because it did not reference K.S.A. 2018 Supp. 8-1604 and did not specify what information he failed to provide did not affect his substantial rights. Again, it was uncontested that Derusseau did not remain on the scene to speak with law enforcement as required by K.S.A. 2018 Supp. 8-1604. Thus, the complaint's failure to reference that statute did not affect his substantial rights because Derusseau knew that he failed to report any of the information to law enforcement when he failed to remain on the scene.

In sum, Derusseau understood the crime he was being charged with and he was able to assert an adequate defense. Thus, while count II of the complaint was deficient in failing to allege a Kansas crime, the deficiency does not warrant reversal because it did not affect Derusseau's substantial rights.

Next, Derusseau argues that the complaint is deficient because it did not provide him with fair notice. Under this type of alleged deficiency, the appellate court is called upon "to determine whether the charging document meets federal and state constitutional standards for due process and notice, such that the defendant has an opportunity to meet and answer the State's evidence and prevent double jeopardy." *Dunn*, 304 Kan. at 815.

Derusseau again argues that because the complaint does not specifically list which duties under K.S.A. 2018 Supp. 8-1604 he violated, he had no notice of the crime. But even if the complaint was so defective that it failed to provide Derusseau with notice of the crime charged, the error would still be subject to the "federal constitutional harmlessness standard of *Chapman* . . . which applies to federal due process and notice claims." *Dunn*, 304 Kan. at 821 (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 [1967]). Under that standard, if the party benefiting from the error

12

proves beyond a reasonable doubt that the error complained of did not affect the defendant's substantial rights, meaning that it did not contribute to the verdict obtained, then the error is harmless. *State v. Ward*, 292 Kan. 541, 568-69, 256 P.3d 801 (2011).

Here, Derusseau did not argue at trial that he complied with the duties in K.S.A. 2018 Supp. 8-1604. Instead, he admitted that he left the scene before speaking to law enforcement. Thus, the lack of allegations about what specific information Derusseau failed to provide to law enforcement did not affect the verdict. Again, Derusseau understood what crime he was charged with and he was able to assert a defense. Thus, while count II of the complaint was factually deficient, the deficiency was harmless under both a statutory and constitutional harmless error standard.

DID THE PROSECUTOR COMMIT PROSECUTORIAL ERROR DURING CLOSING ARGUMENT?

Derusseau next claims the prosecutor committed "misconduct" during closing argument by making statements that were unsupported by the evidence and that showed "ill will" on the part of the prosecutor. Derusseau cites the standard for prosecutorial misconduct before *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016). But in *Sherman*, the Kansas Supreme Court overruled the "particularized harmlessness inquiry" that Derusseau cites and narrowed and renamed review of prosecutorial behavior within a criminal appeal as "prosecutorial error." 305 Kan. at 107. Thus, we will evaluate Derusseau's claim under the *Sherman* prosecutorial error standard.

An appellate court's review of a claim of prosecutorial error involves a two-step process: consideration of error and consideration of prejudice. *Sherman*, 305 Kan. at 109. In considering whether error has occurred, "the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109. If the appellate

13

court finds error, then "the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial" using the constitutional harmless error inquiry. 305 Kan. at 109.

Derusseau does not point to specific statements made by the prosecutor but argues prosecutorial error based on a summarized characterization of the closing argument, which makes his claim of prosecutorial error difficult for us to review. Derusseau first argues that most of the prosecutor's closing argument impermissibly focused on Derusseau's lack of credibility and motive to lie. A prosecutor cannot state his or her personal opinion about the reliability or credibility of a witness' testimony. *State v. Sprague*, 303 Kan. 418, 428, 362 P.3d 828 (2015). But "[a] prosecutor may make statements about a defendant's trustworthiness 'to point out inconsistencies in a defendant's statements and to argue evidence that reflects poorly on a defendant's credibility.'" *State v. Williams*, 308 Kan. 1320, 1325, 429 P.3d 201 (2018).

Here, the prosecutor did not state a personal opinion about the reliability of Derusseau's testimony. Instead, the prosecutor highlighted the evidence and reasonable inferences from the evidence that showed Derusseau's defense theory—that he walked away from the accident because he was confused and trying to get help—was inconsistent with the other evidence presented. In doing so, the prosecutor did not state that Derusseau was lying and did not express his personal opinion about Derusseau's credibility. The prosecutor also began his closing argument by reminding the jury that they were to determine credibility. Thus, the prosecutor committed no error by improperly commenting on Derusseau's credibility.

Moreover, there was no error in the prosecutor commenting on Derusseau's motive to leave the scene. A prosecutor may comment on a witness' motivation to lie, but "must do so by basing the comment on evidence and reasonable inferences drawn from that evidence and without stating his or her own personal opinion concerning a witness'

14

credibility or accusing a witness or defendant of lying." *State v. Armstrong*, 299 Kan. 405, 427, 324 P.3d 1052 (2014). Here, the prosecutor's statements about Derusseau's motive for leaving the scene were reasonable inferences given the testimony from Colby that a breath test or blood draw is usually needed to prosecute someone for DUI. Because the prosecutor based his motive arguments on the evidence and reasonable inferences drawn from the evidence, the statements were not error. *Armstrong*, 299 Kan. at 427.

Next, Derusseau argues that the prosecutor impermissibly inflamed the passions of the jury and made a statement unsupported by the evidence. But the only specific example Derusseau discusses is that the prosecutor "speculated" why Derusseau left the scene of the accident. He also argues that the prosecutor "pulled together irrelevant evidence" to accuse him of trespassing on Olive Valecka's property while "ignoring the . . . evidence that Derusseau was not thinking clearly after the accident."

A prosecutor may not inflame the passions or prejudices of the jury when crafting an argument but may draw reasonable inferences from the evidence. *State v. Anderson*, 308 Kan. 1251, 1261, 427 P.3d 847 (2018). Here, the prosecutor's argument did not constitute prosecutorial error as it was a reasonable inference from the evidence presented. Olive testified that when she got home from the hospital, she thought someone had been in her house because she saw tracks of what she stated looked like grease spots and a pair of socks on her kitchen table. Olive testified that Linder told her the socks were Derusseau's. Colby testified that he found a pair of shoes belonging to Derusseau at the scene and that there was oil and gas and other fluids from the accident that had leaked on the highway. Based on this evidence, the prosecutor's argument that Derusseau was inside Olive's house that night was a reasonable inference from the evidence presented.

Finally, Derusseau argues that the prosecutor impermissibly asked the jury to act as the community conscience by telling them not to condone Derusseau's drinking and leaving the scene. The prosecutor stated: "What he did is he drank, he drove that tractor,

and he was very intoxicated when he did so. . . . And to further compound that, he got into an accident and left, up and left. Those actions cannot be condoned."

Derusseau is correct that an appeal to the community conscience would be improper. Many Kansas cases have found that it is impermissible for the prosecutor to ask the jury to render a verdict to protect the community. See, e.g., *State v. Finley*, 273 Kan. 237, 243-45, 42 P.3d 723 (2002) (finding that the prosecutor's statement that "we don't want people making meth in our communities" was improper because it was an appeal to the jury to render a verdict to protect the community); see also *State v. Witten*, 45 Kan. App. 2d 544, 553, 251 P.3d 74 (2011) (collecting cases that say same).

But Kansas cases have found arguments asking the jury to hold the defendant responsible for his or her actions are proper when they are made without an appeal to the community interest. See, e.g., *Finley*, 273 Kan. at 243-45 (finding no error in the prosecutor asking the jury not to let the defendant "get away with this killing" and to "hold him responsible" because the statements were not an appeal to the community interest and were an argument that the defendant should not escape responsibility based on the evidence including the defense's implausible theory); *State v. Hill*, 28 Kan. App. 2d 28, 38, 11 P.3d 506 (2000) (finding that the prosecutor's statement asking the jury not to let the defendant "get away with this" had the same effect as asking the jury to find the defendant guilty); *State v. Cravatt*, 267 Kan. 314, 335-36, 979 P.2d 679 (1999) (finding that the prosecutor's statement "don't let him get away with it" was simply asking the jury to seriously consider the nature of the defendant's act towards the victim).

Here, the prosecutor did not ask the jury to render a guilty verdict for the safety of the community. Instead, the prosecutor closed his argument by asking the jury not to condone Derusseau's behavior. The prosecutor did so after he argued that the evidence did not support Derusseau's theory of defense or the actions he took the night of the accident. The Kansas Supreme Court found a similar statement to not be erroneous under

16

the same reasoning in *State v. Adams*, 292 Kan. 60, 72, 253 P.3d 5 (2011). In *Adams*, the prosecutor stated: "Do not, I implore you, sanction this behavior. You agree to the defendant's theory that this was self defense, you are sanctioning his behavior and the evidence does not support it." 292 Kan. at 72. The court found that the statement, while using the word sanction, was like the permissible statements asking the jury not to let the defendant get away with it. 292 Kan. at 72. The court reasoned that the statement was similar because there was no appeal to render a verdict based on community interests and because the prosecutor was arguing that the defendant's theory was unsupported by the evidence. 292 Kan. at 72-73. Thus, like in *Adams*, the prosecutor's argument here does not constitute error because there was no appeal to the community interest and the prosecutor argued that Derusseau's theory was unsupported by the evidence.

We conclude that the prosecutor's statements here did not fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction. Because there was no prosecutorial error, we need not address the prejudice prong under the *Sherman* standard of review. See 305 Kan. at 109.

WAS THERE SUFFICIENT EVIDENCE TO SUPPORT DERUSSEAU'S CONVICTION?

Finally, Derusseau claims there is insufficient evidence to support his conviction of leaving the scene of an accident. He asserts that K.S.A. 2018 Supp. 8-1602 requires the State to prove that he failed to stop *and* failed to return *and* failed to remain at the scene. He argues that the State only proved that he did not remain at the scene, thus it did not prove each of the required elements of the crime. Alternatively, he argues that if the statute is interpreted to require only one of these elements to be proved, then the statute is an alternative means statute and the jury should have been given a unanimity instruction.

The State argues that there was sufficient evidence to support the conviction because the State established that Derusseau was the driver of a vehicle involved in an

17

accident that led to an injury and that he walked away from the accident. The State does not address Derusseau's alternative means argument.

The standard of review for a claim of sufficiency of the evidence is well known:

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

Derusseau's arguments also focus on the interpretation of K.S.A. 2018 Supp. 8-1602. Statutory interpretation is a question of law subject to unlimited review. *State v. Rocheleau*, 307 Kan. 761, 763, 415 P.3d 422 (2018).

Derusseau interprets K.S.A. 2018 Supp. 8-1602 as requiring the State to prove that he failed to stop and that he failed to return and that he failed to remain at the scene as separate elements of the crime. But the statute's language does not support this interpretation. K.S.A. 2018 Supp. 8-1602(a) states:

> "The driver of any vehicle involved in an accident resulting in injury to . . . any person . . . shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible, but shall then immediately return to and *in every event shall remain at the scene of the accident until the driver has fulfilled the requirements of K.S.A. 8-1604*, and amendments thereto." (Emphasis added.)

The statute's reference to stopping and returning to the scene are not separate elements. Instead, they are two possible factual descriptions of how a driver could fail to remain on scene. For example, if a driver fails to stop his car by continuing to drive away

18

after an accident, then he fails to remain at the scene. See, e.g., *State v. Rivera*, No. 117,058, 2018 WL 1352530, at *3 (Kan. App. 2018) (unpublished opinion) (finding sufficient evidence to support the defendant's conviction of leaving the scene of an accident when the defendant did not stop his truck and drove home after hitting a person). Similarly, if a driver stops the car away from the scene but does not immediately return, then the driver would have also failed to remain at the scene.

Here, there was sufficient evidence to support a finding that Derusseau did not remain at the scene of an accident. First, it was uncontested that he did not remain at the scene to communicate with law enforcement. Derusseau also testified that he drove the tractor on October 20, 2017. Linder and Olive testified that Linder received injuries from the accident and had to be transported to the hospital. Thus, the only real dispute was whether Derusseau left the scene with the required mental culpability. On that point, the State presented sufficient evidence to support the reasonable inference that Derusseau left the scene to avoid law enforcement because he was intoxicated. Taking the evidence in the light most favorable to the State, a rational fact-finder could have found that Derusseau left the scene of the accident intentionally. Thus, based on the record, there is sufficient evidence on which the jury could determine beyond a reasonable doubt that Derusseau violated K.S.A. 2018 Supp. 8-1602(a) and (b)(2).

Finally, Derusseau's argument that the statute is an alternative means statute fails based on the above analysis. Only the language of the statute can create alternative means for a crime. *State v. Cottrell*, 310 Kan. 150, 160, 445 P.3d 1132, 1141 (2019). If the statute lists "alternative distinct, material elements" then it creates an alternative means crime. *State v. Brown*, 295 Kan. 181, 194, 284 P.3d 977 (2012). But simply describing a material element or factual circumstances that would prove the crime does not create an alternative means crime. *Cottrell*, 310 Kan. at 160. As discussed, the language about stopping and returning is a mere description of the material element of remaining at the

19

scene. Thus, leaving the scene of an accident as defined in K.S.A. 2018 Supp. 8-1602 is not an alternative means crime and no unanimity instruction was required.

Affirmed.